Kent B. CRANE, Appellant,

v.

Archie CARR, III, et al.

No. 86–5345.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1987.

Decided March 27, 1987.

---

Stephen S. Boynton, Vienna, Va., for appellant.

Alan R. Siciliano, Upper Marlboro, Md., for appellees.

RUTH BADER GINSBURG, Circuit Judge:

This case concerns the length of one finger of the District of Columbia longarm statute, specifically, D.C.Code § 13–423(a)(4); that provision authorizes courts in the District to exercise adjudicatory authority over a non-resident defendant as to a claim for relief arising from the defendant's

> causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

An allegedly libelous letter to Belize gave rise to the action. The letter was written in, and mailed from, New York by Archie Carr, III, an officer of a New York non-profit corporation, the New York Zoological Society (NYZS or Society). Addressed to the President of the Belize Audubon Society, the letter concerned a District of Columbia resident, Kent B Crane, and a proposal he had made to establish in Belize a ranch for exotic wild game animals and an endangered animal breeding center. Alleging the requisite diversity of citizenship, *see* 28 U.S.C. § 1332(a)(1), Crane sued NYZS and four of its officers (Carr, and three officers superior to him), all New York residents, in the United States District Court for the District of Columbia. The complaint alleged two claims, one for libel, the other for placing Crane in a "false light."

On defendants' threshold motion, the district court dismissed the action for lack of personal jurisdiction. *Crane v. Carr*, No. 85–3938 (D.D.C. Apr. 30, 1986).[1] In that

---

1. At the oral argument of this appeal, in response to the court's inquiry, counsel for Crane acknowledged that, mindful of the statute of limitations, Crane had commenced a protective action in New York. Crane having taken that precaution, the district judge understandably did not consider, in lieu of dismissal, a transfer pursuant to 28 U.S.C. § 1406(a). *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); *cf. Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C.Cir.1983),

court's view, the District of Columbia long-arm statute did not accommodate the case because "plaintiff ha[d] failed to establish a 'persistent course of conduct,' or either of the two other contacts enumerated in (a)(4), that might permit personal jurisdiction." *Id.*, slip op. at 4. Moreover, the district court added, even if the case satisfied the requirements of the District of Columbia long-arm statute, dismissal would nonetheless occur, because "[d]efendants do not possess the 'minimum contacts' with D.C. necessary to satisfy the due process clause." *Id.* at 4–5.

We vacate the district court's judgment as to the corporate defendant, NYZS. Crane's case was dismissed with no opportunity for discovery on the issue of personal jurisdiction.[2] But the claims in suit, libel and "false light," are the kind in which the injury, foreseeably, is felt with greatest force in the place where the plaintiff lives. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) (bulk of harm in case of libel occurs in plaintiff's domicile); *cf. Asahi Metal Indus. v. Superior Court, —— U.S. ——*, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–99, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490 (1980) (due process limit is crossed when complainant attempts to draw in nonresident defendant based on unilateral, even if foreseeable, activity of others who bear some relationship to defendant). In addition, Crane has pointed to links NYZS has with the District, *see infra* p. 761, sufficient at least to permit further inquiry regarding personal jurisdiction, so that the statutory and constitutional questions can be resolved on a fuller record.

We affirm the dismissal of the action as to the individual defendants, however, because Crane conceded on appeal, both on brief and at oral argument, that he seeks no relief against those defendants in their individual capacity. *See* Brief for Appellant at 3 (individuals are named defendants only "in their official capacity"). The sole relief Crane requests in this action is monetary. He seeks that relief only against NYZS. Whatever discovery Crane might seek from the four individuals as officers or managing agents of NYZS, *see* Fed.R. Civ.P. 30(b)(6), 32(a)(2), he now pursues no claim for relief against the individuals, and therefore tenders no basis for retaining them in the party lineup.

## I.

On December 14, 1984, Archie Carr, III, Assistant Director of Wildlife Conservation International, a division of NYZS, responded to an inquiry from the President of the Belize Audubon Society concerning the proposal of Kent B. Crane to develop a game ranch and endangered species breeding program in Belize. The letter, written on NYZS stationery and signed by Carr as Assistant Director of Wildlife Conservation International, was unfavorable to Crane and his proposal. Carr wrote that Crane was "indeed a 'wheeler-dealer,'" a man who "sounds like ... the kind of wildeyed, arrogant, rich yo yo that [Carr has] always feared would threaten the reef, the land and the people of Belize." Appellant's Appendix (App.) at 44–46. Carr sent copies of

---

cert. denied, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984).

2. *Cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978) ("discovery is available to ascertain the facts bearing on [jurisdictional] issues"); *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 729–31 (11th Cir.1982) (reversing district court's dismissal for lack of subject matter jurisdiction and remanding for discovery on jurisdictional facts because "[p]laintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction"); *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255–56 (1st Cir.1966) (vacating district court's dismissal for lack of personal jurisdiction; diligent plaintiff entitled to "reasonably necessary" discovery in attempting to establish jurisdiction); *Collins v. New York Central System*, 327 F.2d 880, 882–83 (D.C.Cir.1963) (district court erred in dismissing for lack of personal jurisdiction without allowing plaintiff to conduct discovery). *But cf. Naartex Consulting Corp. v. Watt*, 722 F.2d at 788 (additional discovery on personal jurisdiction properly disallowed when plaintiff previously had ample opportunity to take discovery).

the letter to three persons (none of them resident in the District of Columbia), and asked the addressee Audubon Society President to inform a fourth individual (also not a resident of the District); Carr specifically requested that everyone "treat the letter carefully." App. at 46.

Some months later, the Belize Ministry of Natural Resources rejected Crane's proposal; in a July 10, 1985 letter so informing Crane, the Minister stated that "Dr. Carr of the NYZS has written extremely prejudicial remarks about you personally to the President of the Belize Audubon Society." App. at 47. On December 12, 1985, Crane commenced this action asserting that Carr's December 14, 1984 letter defamed him and placed him in a "false light." Crane alleged that the offending letter had been distributed in the District of Columbia to personnel at the Overseas Private Investment Corporation, the National Zoo, the International Institute for Environmental Development, World Wildlife Fund-US, and the Smithsonian Institute. Crane further asserted that Carr knew or should have known that such publication inside the District would occur.

Following an initial status call, held March 5, 1985, defendants moved to dismiss the action on the ground that they were not amenable to suit in the District of Columbia on Crane's claims. On April 30, 1986, the district judge granted the motion. We conclude that he did so with undue haste as to the corporate defendant, NYZS.

## II.

■ As explained at the outset, *see supra* p. 760, the individual defendants are appropriately dropped from the party lineup since Crane is pursuing no relief against them as individuals, and seeks to reach them only "in their official capacity." *See* Brief for Appellant at 3. We observe, moreover, that Crane did not endeavor to contradict the sworn statements supplied by the individual defendants attesting to their lack of affiliation with the District. Each individual stated that his connections were limited to occasional attendance at meetings, correspondence, and telephone

calls. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. at 781 n. 13, 104 S.Ct. at 1482 n. 13 ("Each defendant's contacts with the forum State must be assessed individually."). Finally, we note that in an action properly maintained against NYZS, Crane may depose Society officers "in their official capacity," and the responses they return "may be used by [Crane] for any purpose." FED.R.CIV.P. 32(a)(2).

■ We clear away also Crane's contention in the district court, repeated on appeal, that this case fits within D.C.Code § 13–423(a)(3), which applies to a claim for relief arising from the defendant's

> causing tortious injury in the District of Columbia by an act or omission in the District of Columbia[.]

As the district court succinctly stated, Carr's letter to Belize was not an act *in* the District. *See Reuber v. United States,* 750 F.2d 1039, 1049–50 (D.C.Cir.1984).

The letter was, however, an act outside the District alleged to cause tortious injury in the District. D.C.Code § 13–423(a)(4), set out *supra* p. 759, is the relevant provision, but it requires something more than effects in the District caused by acts done elsewhere. The pivotal question with respect to that subsection's application here is whether NYZS's ties to the District of Columbia amount to a "persistent course of conduct ... in the District." *Cf. Steinberg v. International Criminal Police Org.,* 672 F.2d 927, 931 (D.C.Cir.1981). We turn now to that question.

## III.

We set out below NYZS affiliations with the District of Columbia acknowledged in the affidavit of the Society's General Director. App. at 21–26. The enumeration does not include the Society's "government contacts" relating to grant awards or other NYZS connections with federal agencies. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 786–87 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *Investment Co. Inst. v. United States,* 550 F.Supp. 1213, 1216 (D.D.C.1982) (relationships with federal

agencies did not enter into the personal jurisdiction calculus).

The Bronx Zoo, an NYZS division, occasionally exchanges animals with the National Zoo.

NYZS solicits contributions through nationwide direct mail campaigns. In the Society's most recent fiscal year, District residents constituted less than .2% (88) of the approximately 45,000 donors and donated less than .02% ($4,180) of the $21 million raised.

The Society's bimonthly magazine, *Animal Kingdom,* is printed in the District. Annual printing expense is approximately $450,000. Of 126,000 subscribers, 50 (.04%) reside here.

NYZS is on the board of the American Committee for International Conservation, an organization based in the District.

While Crane resides and conducts his professional business in the District, and therefore can claim he was injured here, the district court held that NYZS's local connections "do[ ] not evidence a persistent presence in D.C." *Crane v. Carr,* slip op. at 4. Because the district court twice observed that defendants had "no presence in D.C.," *id.,* and further stated that they did not "transact business" here, *id.* at 5, we are uncertain whether that court demanded a more arduous showing than D.C.Code § 13–423(a)(4) and the due process clause require. To explain our concern, we must retread some familiar ground.

Personal jurisdiction over NYZS in this diversity action initially turns on local (state) law, here, District of Columbia law. *See Arrowsmith v. United Press Int'l,* 320 F.2d 219 (2d Cir.1963) (en banc); *Ramamurti v. Rolls-Royce, Ltd.,* 454 F.Supp. 407 (D.D.C.1978), *aff'd mem.,* 612 F.2d 587 (D.C.Cir.1980); 4 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1075 at 309–10 & n. 50 (1969). Application of the District's law is subject to a constitutional check. Due process sets the outer boundary; the local law may be coextensive with due process, or it may be more restrictive than the constitutional limit. *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd.,* 647 F.2d 200, 203 (D.C.Cir.1981).

The District's long-arm statute is derived from a portion of the Uniform Interstate & International Procedure Act, 13 U.L.A. 361–62 (1986) (§ 1.03). The statute categorizes forum-related claims for relief in which non-residents may be haled into the District as defendants. At least one finger of the statute, D.C.Code § 13–423(a)(1), has been held by the District of Columbia Court of Appeals to be coextensive (for cases that fit within its description) with the Constitution's due process limit. *Mouzavires v. Baxter,* 434 A.2d 988, 990–92 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982). Subsection (a)(1) covers claims for relief arising from "transacting any business in the District of Columbia." Crane's claims do not fit that description. His defamation/false light case, as earlier observed, falls under subsection (a)(4), which draws in persons who cause "tortious injury in the District of Columbia by an act ... outside the District," but only *"if* [the alleged tortfeasor] ... engages in [a] persistent course of conduct ... in the District." (Emphasis supplied.) The drafters of this provision apparently intended that the (a)(4) subsection would not occupy all of the constitutionally available space. They observed that the proviso, by requiring a plus factor ("some other reasonable connection between the state and the defendant" separate from and in addition to the in-state injury), made (a)(4) "more restrictive" than the prescription covering the "act out/impact in" category of cases in some of the states. *See* UNIF. INTERSTATE & INTERNATIONAL PROCEDURE ACT § 1.03 comment, 13 U.L.A. 363 (1986). This court has explicitly noted, moreover, that (a)(4) of the D.C. long-arm statute may indeed stop short of the outer limit of the constitutional space. *See Moncrief v. Lexington Herald-Leader Co.,* 807 F.2d 217, 221 n. 8 (D.C.Cir.1986); *see also Margoles v. John,* 483 F.2d 1212,-1221 (D.C.Cir.1973).[3]

---

3. While the District of Columbia Court of Appeals has not ruled on the reach of (a)(4) of the

In view of the confusion that sometimes attends the analysis of personal jurisdiction issues such as the one at hand, we put in their proper places three discrete constructs: (1) "doing business," when that term signals local activity sufficient to support all-purpose (general) jurisdiction over a defendant; (2) "transacting business," invoked as a basis for specific adjudicatory authority over claims relating to the very business transacted; and (3) doing (some) business or engaging in other persistent conduct or deriving substantial revenue, relied upon as a plus factor in "act outside the forum/impact inside the forum" cases. *See First American First, Inc. v. National Ass'n of Bank Women,* 802 F.2d 1511, 1516 n. 3 (4th Cir.1986) (distinguishing "persistent conduct" or "bolstering activities" from "doing business").

■ An enterprise incorporated and even headquartered elsewhere may operate so continuously and substantially within a state that it is fair to allow anyone to sue the enterprise in that state on any claim, without regard to where the claim arose. *See International Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945); *Donahue v. Far Eastern Air Transp. Corp.,* 652 F.2d 1032, 1037 (D.C.Cir.1981). Such continuous and substantial operations—sometimes called "doing business," sometimes said to demonstrate corporate "presence"—we emphasize, are *not* involved in this case. Crane does not and could not contend that NYZS does so much in the District that the Society must be deemed "present" here, and therefore amenable to suit locally on claims unrelated to any acts done or effects caused in the District.

Nor does or could Crane contend that the claims he asserts arise out of any business NYZS transacted here. Such specific, "transacting business" jurisdiction might be invoked, for example, by the local printer of the Society's magazine, *Animal Kingdom,* if NYZS failed to pay for print-

ing done for the Society, pursuant to the Society's order, in the District.

We can now describe the third construct, the one employed in D.C.Code § 13–423(a)(4), by observing what it is not, as well as what it is. Under (a)(4), the business done or persistent course of conduct "plus factor" is satisfied by connections considerably less substantial than those it takes to establish general, all-purpose "doing business"- or "presence"-based jurisdiction. *See, e.g., First American First,* 802 F.2d at 1514–15, 1516 n. 3 (4th Cir.1986) (Virginia's long-arm provision covering "out-of-state act causing injury within" accommodates defamation action by Virginia plaintiffs against Illinois non-profit corporation operated from Chicago, where corporation maintained its sole office); *Steinberg,* 672 F.2d at 931; *Topik v. Catalyst Research Corp.,* 339 F.Supp. 1102, 1107 (D.Md.1972), *aff'd mem.,* 473 F.2d 907, *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 198 (1973). Moreover, unlike the "transacting business" nexus employed in D.C.Code § 13–423(a)(1), subsection (a)(4) contemplates a connection that may be *unrelated* to the claim in suit. UNIF. INTERSTATE & INTERNATIONAL PROCEDURE ACT § 1.03 comment, 13 U.L.A. 363 (1986).

To recapitulate, under (a)(4), the act outside/*impact inside* the forum is the basis for drawing the case into the court, but because the harm-generating act (or omission) occurred outside, the statute calls for something more. The "something more" or "plus factor" does not itself supply the basis for the assertion of jurisdiction, but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum. *See id.; Steinberg,* 672 F.2d at 931 (the "persistent course of conduct" under (a)(4) need not be related to the act that caused the injury; all that is required is "some other reasonable connection" between the defendant and the fo-

---

D.C. statute, it has noted that "Congress intended to vest courts of the District with jurisdictional reach identical to that in effect in Maryland," and that Maryland courts have interpreted provisions of the Maryland statute (including

(a)(4)) as having a narrower scope than the due process clause. *Mouzavires v. Baxter,* 434 A.2d 988, 991 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).

rum); *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 432 (D.C.Cir.1976); *Beaty v. M.S. Steel Co.*, 401 F.2d 157, 159–60 & n. 3 (4th Cir.1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969).

■ Crane, we hold, is entitled to a fair opportunity to inquire into NYZS's affiliations with the District. *See supra* note 2. First, with respect to the "plus factor" required under D.C.Code § 13–423(a)(4), Crane should be allowed to seek a more detailed delineation of NYZS's activities in the District, other than the Society's "government contacts." *See supra* p. 761. Second, relevant to the ultimate due process question, Crane should be permitted to inquire how it came to be that copies of Carr's letter to Belize arrived at various places in the District concerned with wildlife and environmental matters. What responsibility, if any, do Carr and his employer NYZS bear for the appearance of the letter here? Did NYZS, through its officers, have a hand in the distribution, or could the Society reasonably expect that the letter would be published to D.C.-based organizations? The case that Crane's suit in the District of Columbia is compatible with constitutional constraints on the assertion of adjudicatory authority may well turn on the answers to these questions. *Cf. First American First*, 802 F.2d at 1515–17 (defamatory letters "purposefully directed" at Virginia plaintiffs, "though written in and mailed from Illinois and distributed throughout the country," satisfied due process nexus requisite to exercise of personal jurisdiction).

CONCLUSION

For the reasons stated, the judgment of the district court dismissing the action for lack of personal jurisdiction is affirmed as to the individual defendants and vacated as to the New York Zoological Society. The case against the Society is remanded to the district court with instructions to permit the plaintiff to engage in reasonable discovery addressed to the jurisdictional issue.

*It is so ordered.*