Hassan EL–FADL, Appellant

v.

CENTRAL BANK OF JORDAN,
et al., Appellees.

No. 94–7212.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 14, 1995.

Decided Feb. 6, 1996.

Sam W. Burgan, Washington, DC, argued the cause for appellant, with whom Frederick R. McDermott, Oxon Hill, MD, was on the briefs.

Christopher M. Curran, argued the cause for appellees Central Bank of Jordan, et al., with whom George L. Paul, Washington, DC, was on the brief.

John R. Fornaciari, argued the cause for appellee Petra International Banking Corporation, with whom John J. Vecchione, Washington, DC, was on the brief.

Before: GINSBURG, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Hassan El–Fadl filed suit in the Superior Court of the District of Columbia seeking to recover damages against Petra International

Banking Corporation ("PIBC") for wrongful termination of employment as well as for various tort claims against several Jordanian institutions and officials: the Central Bank of Jordan, its Governor and Deputy Governor, and Petra Bank (together, the "Jordanian defendants").[1] The Central Bank of Jordan removed the case to federal district court pursuant to the Federal Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1441(d) (1994). Following the removal, the Jordanian defendants filed a motion to dismiss, and PIBC also filed a motion to dismiss and, in the alternative, for summary judgment. The district court dismissed the complaint as to all defendants. First, the court ruled that the Central Bank, Governor Mohammed Saeed El–Nabulsi, and Deputy Governor Michel Marto (together, the "sovereign defendants") were immune from suit under the FSIA. Second, the court granted Petra Bank's motion to dismiss for lack of personal jurisdiction under the District of Columbia "doing business" and long-arm statutes found in D.C.Code §§ 13–334, 13–422, and 13–423. Third, the court granted PIBC's motion to dismiss on *forum non conveniens* grounds, although the court had personal jurisdiction, because El–Fadl had an available forum in the Jordanian courts. The court denied El–Fadl's motion for reconsideration.

On appeal, El–Fadl contends principally that the district court erred in finding that he had an adequate alternative forum available to sue PIBC in Jordan and that the court erred in dismissing, prior to discovery, his claims against Petra Bank for lack of personal jurisdiction in the District of Columbia. He also contends that the district court erred in dismissing his claims against Deputy Governor Marto. Although we find no merit to El–Fadl's claim that the court has jurisdiction over Deputy Governor Marto, we reverse the pre-discovery dismissal as to Petra Bank for lack of personal jurisdiction and remand to allow El–Fadl to have discovery of jurisdictional facts. We also reverse and remand the *forum non conveniens* dismissal of

the claims against Petra Bank and PIBC because the defendants failed to show that El–Fadl's claims can be filed in the Jordanian courts.

## I.

El–Fadl is a Lebanese national who has lived in Jordan since 1982. In his complaint, he alleges that he was employed by PIBC, a subsidiary in the District of Columbia of Petra Bank, a privately owned bank in Jordan. From 1982 to 1989 he was employed by PIBC in Jordan as manager of a regional office for Middle Eastern clients. He had signed a contract under which he "would be permanently employed for life as a senior manager of Petra International Banking Corporation." The defendants maintain that El–Fadl was employed by Petra Bank (not PIBC) as a senior manager with responsibility for currency and precious metals trading.

In August 1989, the Central Bank of Jordan announced that it had uncovered widespread financial improprieties at Petra Bank and placed Petra Bank in receivership. Since then, Petra Bank has been run by a Liquidation Committee appointed by the Jordanian government. The Deputy Governor of the Central Bank, Michel Marto, was appointed to administer the liquidation of PIBC, and Marto came to the District of Columbia for that purpose. On September 14, 1989, Marto sent El–Fadl a letter in which PIBC terminated El–Fadl's employment as senior manager of the PIBC office in Amman. As part of the Jordanian authorities' investigation of the Petra Bank scandal, El–Fadl was arrested on October 29, 1989. El–Fadl alleges that the military police detained him for five days and tortured him, until he was released on bail. El–Fadl was prosecuted first in the Military Courts under Martial Law and then in the State Security Court, where he was "declared innocent" on April 9, 1992, which finding was affirmed by the Prime Minister on August 2, 1992. While the charges were pending, El–Fadl

---

1. The complaint sought damages from PIBC for breach of employment contract, refusal to pay wages and negligent termination of employment contract; from the sovereign defendants (the Central Bank, its Governor and Deputy Governor) and PIBC for malicious prosecution and false arrest; from the sovereign defendants for false imprisonment; and from all defendants for libel and intentional infliction of emotional and physical distress.

alleges that he was forbidden to leave Jordan. On July 30, 1993, El–Fadl filed suit in the District of Columbia.

## II.

**Sovereign immunity.** The district court dismissed the claims against the Central Bank, Governor Nabulsi and Deputy Governor Marto under the FSIA. The court found that the Central Bank was a "foreign state" under the FSIA, 28 U.S.C. § 1603(a), and had not waived its sovereign immunity. The court ruled that Nabulsi and Marto were also immune because they were being sued in their official capacities as agents of the Central Bank. The court rejected El–Fadl's arguments that his claims fell under the "non-commercial tort" exception or the "commercial activity" exception to the FSIA. 28 U.S.C. §§ 1604, 1605(a)(2), (5).

On appeal, El–Fadl has abandoned his claims against the Central Bank and Nabulsi but seeks to maintain his claims against Marto on the ground that Marto was acting not in his official capacity but in an individual capacity as Chairman and General Manager of PIBC. Because El–Fadl failed to present any evidence that Marto was acting outside his official capacity, the district court found that Marto had no "personal interests at stake in connection with Petra [Bank] or PIBC." We affirm.

An individual can qualify as an "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(b) (1994);[2] *see Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1101–03 (9th Cir.1990). Although El–Fadl claims to be suing Marto in an individual capacity, the only evidence in the record shows that Marto's activities in managing PIBC were neither personal nor private, but were undertaken only on behalf of the Central Bank. Thus, Marto's affidavit states that in connection with the liquidation of PIBC, after being elected Chairman of PIBC and serving as its General Manager, he continued to be employed only at the Central Bank and that his "responsibilities with respect to PIBC were only a very minor part of [his] responsibilities as a Deputy Governor of the Central Bank." El–Fadl points to nothing more than the fact that Marto was Chairman and General Manager of PIBC and sent the letter of termination while he was in the District of Columbia. We therefore affirm the dismissal of the claims against Marto on grounds of sovereign immunity.[3] El–Fadl is not entitled to discovery against Marto because, in light of the evidence that Marto proffered to the district court and the absence of any showing by El–Fadl that Marto was not acting in his official capacity, discovery would " 'frustrate the significance and benefit of entitlement to immunity from suit.' " *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 449 (D.C.Cir. 1990) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 451 (6th Cir.1988)).

## III.

**Personal jurisdiction.** The district court granted Petra Bank's motion to dismiss for lack of personal jurisdiction under D.C.Code §§ 13–422, 13–334 or 13–423(a). First, the district court agreed that it lacked general jurisdiction over Petra Bank under D.C.Code § 13–422 because Petra Bank was not a "person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia."[4] D.C.CODE ANN. § 13–422 (1995). Second, the court agreed with Petra Bank that it was not subject to general jurisdiction for "doing

---

**2.** 28 U.S.C. § 1603(b) provides:

An "agency or instrumentality of a foreign state" means any entity—
(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
(3) which is neither a citizen of a State of the United States as defined in section

1332(c) and (d) of this title, nor created under the laws of any third country.

**3.** In light of our disposition, we do not reach the district court's alternative holding that it lacked personal jurisdiction over Deputy Governor Marto.

**4.** The district court ruled that it had personal jurisdiction over PIBC under § 13–422 of the D.C.Code.

business" in the District of Columbia under D.C.Code § 13–334.[5] Neither Petra Bank's maintenance of correspondent banking relationships nor its ownership of more than 70% of the shares in PIBC sufficed for "doing business." Third, the court agreed that it lacked specific jurisdiction over Petra Bank under the District of Columbia long-arm statute because none of El–Fadl's claims "arose from" Petra Bank's alleged contacts with the District. D.C.CODE ANN. § 13–423(a) (1995). Although El–Fadl had moved to stay dismissal for lack of personal jurisdiction until he had conducted discovery of jurisdictional facts, the district court denied his motion as moot.

## A.

■ **Raising Issue on Appeal.** In his brief on appeal, El–Fadl contends that the district court had personal jurisdiction over Petra Bank. He alleges, citing the long-arm statute, that various general business contacts of Petra Bank with the District of Columbia constitute "transacting any business in the District of Columbia." D.C.CODE ANN. § 13–423(a)(1). In addition, he alleges that, by entering into collateral loan agreements in the District, Petra Bank is "contracting to supply services in the District of Columbia." *Id.* § 13–423(a)(2). El–Fadl also alleges that Petra Bank caused him tortious injury in the District of Columbia because he was employed in the District when Petra Bank allegedly tortiously interfered with his employment contract and defamed him. *Id.* § 14–423(a)(3), (4).

El–Fadl's brief does not distinguish between "transacting business" under the long-arm statute and "doing business" for purposes of general jurisdiction. *See Crane v. Carr,* 814 F.2d 758, 763 (D.C.Cir.1987). His reliance on the long-arm statute is misplaced because he has failed to show any connection between the alleged jurisdictional acts and the District of Columbia. Because El–Fadl's claims are not related to any of Petra Bank's general business contacts with the District of Columbia, they cannot confer specific jurisdiction under the long-arm statute. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984) (*Helicol*). As to El–Fadl's claims of tortious injury under subsections (a)(3) and (4), it appears unlikely that one living and working in Jordan would be injured in the District of Columbia merely because his employer's principal place of business was located here. In any event, El–Fadl has made no showing that such conduct by Petra Bank was "purposefully directed" at the District of Columbia. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Thus, we affirm the district court's holding that it lacked personal jurisdiction under § 13–423(a).[6]

■ On the other hand, El–Fadl's brief repeats the language of what the courts have construed to be the District of Columbia's general jurisdiction statute, D.C.Code § 13–334(a), in arguing, as he did in the district court, that "Petra Bank has been doing business in the District of Columbia." Appellant's Brief at 17–20. In support of his contention, he recites a long list of general contacts between Petra Bank and the District of Columbia, *see infra* Part III(B), and maintains that Petra Bank "had systematically been involved in commercial banking activities in the District of Columbia," "continuously and systematically conducted business in the District of Columbia," and had a "continuous presence and continuing involvement in business activities in the District of Columbia." *Id.* at 18–20. This is the language of general jurisdiction, directly re-

---

5. D.C.Code § 13–334(a) (1995) (Service on foreign corporations) provides:

In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business

or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

6. We also affirm the district court's holding that it lacked jurisdiction under § 13–422 because the record shows that Petra Bank is organized under the laws of Jordan and maintains its principal place of business there.

sponsive to Petra Bank's motion to dismiss for lack of jurisdiction under § 13–334. The district court's opinion makes clear that it so understood El–Fadl's arguments, explaining:

> Doing business has been interpreted by the District of Columbia Court of Appeals as requiring a "continuing corporate presence", and conducting "substantial business" in the District. The defendants argue that [El–Fadl's] conclusory statements alleging that the defendants are doing business in the District within the meaning of § 13–334 are not sufficient to constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction. The Court is *inclined* to agree. [El–Fadl] has failed to present any evidence to support his position that the court could exercise jurisdiction over the Jordanian defendant pursuant to D.C.Code § 13–334. To the contrary, the defendants *seem* to establish that their presence in the District of Columbia is very limited, and, in the case of Petra Bank, the presence of PIBC in the District is insufficient to create personal jurisdiction over Petra Bank.
>
> (emphasis added) [7]

Federal Rule of Appellate Procedure 28(a)(6) requires the appellant's brief to include an argument, which "must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." In explaining the application of Rule 28(a)(6), this court has stated:

> The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.... Failure to enforce [Rule 28(a)(6) ] will ultimately deprive us in substantial measure of that assistance of counsel which the system as-

sumes—a deficiency that we can perhaps supply by other means, but not without altering the character of our institution. Of course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research. But where counsel has made no attempt to address the issue, we will not remedy the defect....

*Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.). Thus, when an appellant "contented itself with conclusory assertions," the "[a]ppellees did not address the merits of the claim at all," and "the issue was not passed upon below," this court "normally will not address claims raised in such a cursory fashion." *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 697–98 (D.C.Cir.1991); *see also Rollins Envtl. Servs. (NJ) Inc. v. EPA*, 937 F.2d 649, 652 n. 2 (D.C.Cir.1991). Nor will the court address issues that are not at all mentioned in the appellant's brief, by contrast with "a situation in which an appellant incorporates by reference or otherwise 'implicitly' raises a generic legal claim." *McBride v. Merrell Dow & Pharmaceuticals, Inc.*, 800 F.2d 1208, 1211 (D.C.Cir.1986).

By contrast with the barren claims in *Texas Rural Legal Aid*, El–Fadl presented in his brief detailed factual assertions in opposition to Petra Bank's assertions, adopted by the district court, that it was not "doing business" in the District of Columbia within the meaning of § 13–334. The Jordanian defendants recognized that El–Fadl was again contesting their claim of lack of jurisdiction under § 13–334 and have devoted nine pages of the eleven page-section in their brief on personal jurisdiction to a comprehensive analysis of § 13–334. Jordanian Appellees' Brief at 25–33. As noted, the district court

---

7. The district court cited *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C.1981) (per curiam), and *Guevara v. Reed*, 598 A.2d 1157, 1159 (D.C.1991). In those cases, the D.C. Court of Appeals rejected the argument that § 13–334(a) "is merely a service of process act, superseded when the long-arm statute was enacted," and construed the statute to "confer[ ] jurisdiction upon trial courts here over foreign corpo-

rations doing substantial business in the District of Columbia, even though the claim arose from a transaction which occurred elsewhere, and hence, outside the scope of the long-arm statute." *Guevara*, 598 A.2d at 1159 (citing *AMAF Int'l Corp.*, 428 A.2d 849). *AMAF* relied on this court's opinion in *Goldberg v. Southern Builders, Inc.*, 184 F.2d 345, 346–47 (D.C.Cir.1950). 428 A.2d at 850.

expressly ruled on the § 13–334 arguments by the parties. Nothing in our local version of Rule 28 would require more. D.C.CIR.R. 28(a).

Consequently, neither the opposing party, the district court, nor this court has been misled by the fact that El–Fadl did not expressly cite D.C.Code § 13–334(a) itself in his brief. The "doing business" arguments in El–Fadl's brief, in response to the district court's agreement with Petra Bank's § 13–334(a) arguments, are presented in the language of general jurisdiction, notwithstanding the misguided attempts by El–Fadl's counsel to link these contacts to the long-arm statute.[8] El–Fadl did not distinguish between specific and general jurisdiction in opposing Petra Bank's motion to dismiss for lack of personal jurisdiction in the district court, and by making the same arguments in his brief on appeal, it is clear that he has not waived his § 13–334(a) arguments. Moreover, his failure to cite § 13–334(a) *in haec verba* becomes more understandable in light of "the confusion that sometimes attends the analysis of personal jurisdiction issues," *Crane,* 814 F.2d at 763, and the misleading organization of the District of Columbia Code. Chapter 4 of title 13 of the District of Columbia Code addresses jurisdiction while chapter 3 of title 13 addresses service of process. Yet, as the district court here recognized, the District of Columbia courts have construed § 13–334(a) to be a jurisdictional statute. *See supra* note 7. Indeed, other district courts in this circuit have acknowledged that § 13–334(a) on its face appears to apply only to service of process. *See Ross v. Product Dev. Corp.,* 736 F.Supp. 285, 289 n. 7 (D.D.C.1989); *Bayles v. K–Mart Corp.,* 636 F.Supp. 852, 855 (D.D.C.1986).

The court, in any event, has unquestioned authority to reach the issue of general jurisdiction, even if El–Fadl had waived any reliance on § 13–334(a). "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 1718, 114 L.Ed.2d 152 (1991). The Supreme Court has upheld a decision by this court to reach "an issue 'antecedent to ... and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." *United States Nat'l Bank v. Independent Ins. Agents,* 508 U.S. 439, ——, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993) (quoting *Arcadia v. Ohio Power Co.,* 498 U.S. 73, 77, 111 S.Ct. 415, 418, 112 L.Ed.2d 374 (1990)) (ellipsis in *U.S. Nat'l Bank* ). In the instant case, resolution of the § 13–334(a) basis for personal jurisdiction is potentially dispositive of Petra Bank's motion to dismiss for lack of personal jurisdiction. Moreover, prudential concerns should not lead us to construe El–Fadl's brief as waiving reliance on § 13–334(a). Recognizing that "the hard analysis comes in determining when an issue or claim is properly before the court," *Independent Ins. Agents v. Clarke,* 955 F.2d 731, 742 (D.C.Cir.1992) (Silberman, J., dissenting), *rev'd sub nom. United States Nat'l Bank v. Independent Ins. Agents,* 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), we find that El–Fadl's brief presents both possible bases, general and specific, for personal jurisdiction over Petra Bank. Indeed, El–Fadl asserts, in his statement of issues presented, that "[t]he District Court erred ... in dismissing claims against a foreign defendant for lack of personal jurisdiction, prior to discovery or a hearing."

Declining to reach the issue of general jurisdiction would not further the prudential concerns underlying Federal Rule of Appellate Procedure 28 as articulated in *Carducci v. Regan.* This court has the benefit of briefing by both parties as well as the ruling of the district court. *Cf. United States v.*

---

8. Not all the contacts recited by El–Fadl can logically be tied into his assertion of specific jurisdiction. Although El–Fadl concludes that his claims "arise from Petra's role in taking over and managing PIBC," he makes numerous other allegations of continuous contacts by Petra Bank that are unrelated to its takeover of PIBC (*e.g.,* "Petra Bank by its own and separate conduct made commercial loans...."). His claims obviously do not "aris[e] from" these unrelated contacts. Thus, many of El–Fadl's allegations would relate *only* to a claim for general jurisdiction under § 13–334(a).

*Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim."). The jurisdictional issue is fully presented to us, with the assistance that counsel can provide. Efficiency in appellate adjudication is not served by letting stand a potentially erroneous decision because counsel for the appellant has failed to cite the title and section number of a statute that both parties address and the district court discussed in its decision on personal jurisdiction. *Cf. Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 n. 2 (4th Cir.1993). The lack of any prejudice to the appellee or to the institutional structure of the court from this apparently inadvertent omission strengthens the general proposition that the court should "liberally construe briefs in determining issues presented for review." *SEC v. Recile*, 10 F.3d 1093, 1096 (5th Cir.1993) (per curiam); *accord Federal Sav. & Loan Ins. Corp. v. Haralson*, 813 F.2d 370, 373 n. 3 (11th Cir.1987). Any other result would be unduly harsh because the issue involves jurisdiction, thereby jeopardizing a party's right to have the merits of his claims heard before any discovery has taken place. *Cf. Sikora v. Brenner*, 379 F.2d 134, 136 (D.C.Cir.1967); *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir.1978).

## B.

■ **Discovery of facts for general jurisdiction.** As part of his contention that the district court had general jurisdiction over Petra Bank, El–Fadl requests discovery from Petra Bank of jurisdictional facts. In opposing the Jordanian defendants' motion to dismiss for lack of personal jurisdiction, El–Fadl requested the district court to stay ruling on the motion until he had conducted "limited discovery" on "[t]he extent of Petra Bank's business activities in the District of Columbia." In his brief on appeal, El–Fadl maintains that "[q]uestions put to Petra Bank on discovery regarding its business activities in the District of Columbia went unanswered. . . . At the very least, El–Fadl is entitled to discovery on this matter before

it is decided. *Crane v. Carr*, 814 F.2d 758 (D.C.Cir.1987)."

On the present record, El–Fadl has not made a *prima facie* case that Petra Bank was "doing business" in the District of Columbia. *See* D.C.CODE ANN. § 13–334(a); *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C.Cir.1991). For general jurisdiction, the Due Process Clause requires that the defendant have "continuous and systematic general business contacts" with the forum. *Helicol*, 466 U.S. at 416, 104 S.Ct. at 1873; *see also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952). El–Fadl asserts the following facts about Petra Bank's contacts with the District of Columbia: (1) Petra Bank issued a commercial loan of over $500,000 in 1989; (2) in litigation concerning that loan in the D.C. Superior Court, Petra Bank filed a counter-claim; (3) Petra Bank has entered into several "collateral agreements covering loans in the District of Columbia," using a form contract that selects as the governing law the laws of the District of Columbia; (4) Petra Bank owns 70% of PIBC, its District of Columbia subsidiary, with which Petra Bank maintains bank accounts in the District of Columbia; (5) El–Fadl sent millions of dollars by wire transfers through Petra Bank from PIBC offices in Jordan to PIBC's main office in the District of Columbia; and (6) in a deposition for another case, PIBC's general manager, Randolph Old, stated that Petra Bank had "joint loans" with PIBC and that PIBC acted as Petra Bank's "collection agent" in the District of Columbia. The allegations concerning the loan, the consequent litigation, and the collateral agreements are mere isolated and sporadic contacts unrelated to the claims in the instant case. By contrast, § 13–334(a) requires a "continuing corporate presence in the forum . . . directed at advancing the corporation's objectives." *AMAF Int'l Corp.*, 428 A.2d at 851; *see also Helicol*, 466 U.S. at 416–17, 104 S.Ct. at 1873. El–Fadl's allegations concerning the relationship between PIBC and Petra Bank attempt to attribute the subsidiary's contacts with the District of Columbia to the parent corporation.[9] Al-

9. In an unrelated case, the court did not reach the issue of whether PIBC was the "alter ego" of

Petra Bank. *A.I. Trade Fin., Inc. v. Petra Int'l*

though a parent-subsidiary relationship alone is insufficient, *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336–37, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925), if parent and subsidiary "are not really separate entities," *I.A.M. Nat'l Pension Fund v. Wakefield Indus., Inc.,* 699 F.2d 1254, 1259 (D.C.Cir.1983), or one acts as an agent of the other, *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 419 (9th Cir.1977), the local subsidiary's contacts can be imputed to the foreign parent. Yet El–Fadl has shown only that Petra Bank owns the majority of shares in PIBC and that the two corporations have worked together on certain transactions. *See Ramamurti v. Rolls–Royce Ltd.,* 454 F.Supp. 407, 413 (D.D.C.1978), *aff'd mem.,* 612 F.2d 587 (D.C.Cir.1980).

Even though El–Fadl's present jurisdictional allegations are insufficient, he has sufficiently demonstrated that it is possible that he could supplement them through discovery. In *Crane,* 814 F.2d at 760, this court reversed when a plaintiff's case was dismissed "with no opportunity for discovery on the issue of jurisdiction." Because no discovery at all had been allowed, *Crane* differs from *Naartex Consulting Corp. v. Watt,* 722 F.2d 779 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984), in which the court held that the district court did not abuse its discretion in denying further jurisdictional discovery when the plaintiff had already had " 'ample opportunity' to take discovery." *Id.* at 788 (quoting *Zerilli v. Smith,* 656 F.2d 705, 716 (D.C.Cir.1981)); *see Edmond v. United States Postal Serv. Gen. Counsel,* 953 F.2d 1398, 1401 (D.C.Cir.1992) (R.B. Ginsburg, J., concurring in denial of rehearing en banc). The *Crane* court held that the plaintiff was "entitled to a fair opportunity to inquire into [the defendant]'s affiliations with the District." 814 F.2d at 764. Similarly, in *Edmond,* this court held that the district court abused its discretion in denying jurisdictional discovery when the plaintiff had alleged the existence of a conspiracy that would allow the court to attribute the local conspirator's contacts with the District of Columbia to the co-conspirators. 949 F.2d at 425. The *Edmond* court distin-

guished *Naartex* as a case "where the allegations of conspiracy were conclusory." *Id.; see also Wyatt v. Kaplan,* 686 F.2d 276, 283–84 (5th Cir.1982).

El–Fadl's request is for initial discovery, limited to jurisdictional facts. His allegations, although they fall short of a *prima facie* case that Petra Bank was "doing business" in the District of Columbia, are not "conclusory" to the extent that El–Fadl has alleged specific transactions. His theory that Petra Bank may have had further, as yet unknown, connections to the District is not implausible. Petra Bank initially denied having any contacts with the District of Columbia other than as a correspondent bank. If litigation had not fortuitously ensued over Petra Bank's $500,000 commercial loan, El–Fadl would not have been able to challenge the statements by Petra Bank's affiants that it had not extended such loans. A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum.

Accordingly, we reverse the dismissal of El–Fadl's claims against Petra Bank for lack of personal jurisdiction and remand those claims to the district court in order to allow El–Fadl to conduct reasonable discovery on personal jurisdiction.

## IV.

**Forum non conveniens.** The district court dismissed El–Fadl's claims against all defendants on the ground of *forum non conveniens.* In light of the affirmance of the dismissal of the claims against the sovereign defendants on other grounds, El–Fadl's objections to the dismissal on *forum non conveniens* relate to the remaining defendants, Petra Bank and PIBC.

▮ In deciding a *forum non conveniens* motion, the district court must first establish that there is an adequate alternative forum:

At the outset of any *forum non conveniens* inquiry, the court must determine

*Banking Corp.,* 62 F.3d 1454, 1457 (D.C.Cir. 1995).

whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.
*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981) (citation omitted). Only if there is an adequate alternative forum must the court then weigh the relative conveniences to the parties against the presumption of the plaintiff's forum selection. *Pain v. United Technologies Corp.,* 637 F.2d 775, 784 (D.C.Cir. 1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). "Availability of adequate alternative fora is a threshold test ... in the sense that a *forum non conveniens* motion cannot be granted unless the test is fulfilled." *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 717 F.2d 602, 607 (D.C.Cir.1983). The defendant bears the burden of proving that there is an adequate alternative forum. *See, e.g., Mercier v. Sheraton Int'l, Inc.,* 935 F.2d 419, 423, 425 (1st Cir.1991); *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1164 (5th Cir.1987) (en banc), *vacated in part on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989); *Cheng v. Boeing Co.,* 708 F.2d 1406, 1411 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983); *Schertenleib v. Traum,* 589 F.2d 1156, 1160 (2d Cir.1978); *see also Watson v. Merrell Dow Pharmaceuticals, Inc.,* 769 F.2d 354, 357 (6th Cir.1985).

■ Our review of the grant of a motion to dismiss for *forum non conveniens* is for abuse of discretion. *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. at 266; *Pain,* 637 F.2d at 781. Although this is a deferential standard of review, the district court abuses its discretion when it fails to consider a material factor or clearly errs in evaluating the factors before it, *Mercier,* 935 F.2d at 423, or "does not hold the defendants to their burden of persuasion on all elements of the forum non conveniens analysis." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1394 (8th Cir.1991); *see also Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43 (3d Cir.1988).

■ To show the existence of an adequate alternative forum, the defendant "must provide enough information to enable the District Court" to evaluate the alternative forum. *Piper Aircraft,* 454 U.S. at 258, 102 S.Ct. at 267. Because the defendant has the burden of establishing that an adequate alternative forum exists, this court will reverse when "the affidavit through which [the defendant] attempted to meet its burden contains substantial gaps." *Mercier,* 935 F.2d at 425. The amount of information that the defendant must provide, in supporting affidavits or other evidence, depends on the facts of the individual case. *Lacey,* 862 F.2d at 44. Accordingly, the defendant must provide more detailed information if the plaintiff provides evidence that controverts the defendant's evidence. *See Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374, 1379–80 & n. 17 (5th Cir.1988). If the record before the court is so "fragmentary" that "it is impossible to make a sound determination" of whether an adequate alternative forum exists, the court will remand for further development of the facts. *See C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304, 1308–09 (11th Cir.1983).

■ PIBC and Petra Bank could not prove on the present record that Jordan was an adequate alternative forum. PIBC submitted an affidavit from a Jordanian attorney, Rami M. Al–Hadidi, who states that "Jordanian courts are open to El–Fadl to adjudicate these claims against the defendants." Al–Hadidi also explains that the Jordanian Civil Code recognizes various causes of action that El–Fadl has brought. Yet PIBC's expert fails to address various potentially dispositive provisions of Jordanian law that El–Fadl brought to the district court's attention. Given the gap in PIBC's expert's affidavit and the undeveloped state of the record on this issue, the district court erred in finding that PIBC or Petra Bank met its burden of showing that Jordan is an adequate alternative forum. *Cf. Mercier,* 935

F.2d at 425; *C.A. La Seguridad*, 707 F.2d at 1308.

El–Fadl maintains that the Jordanian courts lack jurisdiction over claims based on actions taken in connection with the Petra Bank scandal—including actions on which he bases his claims for recovery. He called the district court's attention to a Jordanian statute, Law No. 2 for the year 1992, the *Law of Lifting of Responsibility as a Result of Cancellation of the Martial Law* (issued Sep. 12, 1991) ("Law No. 2"). As part of the lifting of martial law, Law No. 2 referred "[a]ll lawsuits" then in the military courts to the "competent Courts," except that "[n]otwithstanding the [general] provisions ..., the lawsuits of Petra Bank Company which are currently at the Martial Courts under investigations or trial shall be referred to the State Security Court." Law No. 2 further declared that:

> All civil and military employees as well as all the other persons who undertook the implementation of the instructions of the Military Administration or had any relation with the implementation thereof at any time during the time when the martial law was in effect shall be discharged from any legal responsibility which resulted or will result from their actions pursuant to the provisions.

In addition, El–Fadl cited two resolutions regarding Petra Bank.[10] Based on the foregoing legal authorities, El–Fadl's expert, a Jordanian attorney named Ibrahim J. Tukan, states in his affidavit that "[t]he above listed laws, decrees, and statutes constitute an absolute prohibition to Mr. El–Fadl to bring his

causes of action in Jordan." PIBC's expert, Al–Hadidi, does not address any of these authorities in his affidavit.

Consequently, if El–Fadl's expert is correct in describing the legal situation in Jordan, the Jordanian courts would appear to be closed to El–Fadl's claims against Petra Bank and perhaps even to claims against PIBC. Then this court would be faced with the "rare circumstance[ ]" in which "the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. A foreign forum is not inadequate merely because it has less favorable substantive law, *id.* at 247–55, 102 S.Ct. at 261–65, because it employs different adjudicative procedures, *see, e.g., Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir.1991), or because of general allegations of corruption in the judicial system. *See, e.g., Blanco v. Banco Industrial de Venezuela*, 997 F.2d 974, 981–82 (2d Cir.1993). El–Fadl's repeated reliance on a State Department report expressing "concern about the impartiality" of the Jordanian court system, for example, is unavailing. But if the foreign forum would deny him access to its judicial system on the claims in his complaint, dismissal on *forum non conveniens* grounds is inappropriate. *See Ceramic Corp. v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir.1993).

The district court concluded "that the affidavit submitted by [El–Fadl's] Jordanian attorney does not state unequivocally that [El–Fadl] is barred from bringing this suit in Jordan." Yet the attorney (Tukan) makes

---

10. Resolution No. 4/90 of the Economic Security Committee, entitled *Liquidation of Petra Bank Public Shareholding Company Ltd.*, issued on July 15, 1990, decrees that:

> Upon the request of the liquidator, the courts and the execution departments shall stop the proceedings in any court action or act at present undertaken by Petra Bank or against it. As from the date of the start of the liquidation no court action or any new judicial proceedings may be heard against Petra Bank or the liquidator.

In Resolution No. 230/90, entitled *Suspension of Lawsuits* and issued on September 8, 1990, the Petra Bank Liquidation Committee announced that:

> [T]he Liquidation Committee has resolved ... [to] [r]equest the competent Courts to suspend

the progress in all the lawsuits in which the Petra Bank is a party whether as a plaintiff or defendant before the Courts of Conciliation, First Instance and Appeal as well as the Wages Authority Court of the Ministry of Labour and [to] commission the Director General to communicate with the concerned authorities for the implementation of this resolution.

El–Fadl has also produced letters from Bassam Atari, the deputy chairman of the Liquidation Committee, to the President of the Amman Court of Appeals and to the President of the Magistrate Court of Amman, in which Atari refers to the two resolutions quoted above and requests the judges on both those courts to implement the resolutions and "suspend all the lawsuits in which the Petra Bank is a party."

precisely that claim in his affidavit, based on his interpretation of the Jordanian statutes. PIBC and Petra Bank failed to respond with evidence that the Jordanian courts are available to El–Fadl. Petra Bank, which argued only that Resolution No. 4/90 directed El–Fadl's claims to insolvency proceedings, failed to address Law No. 2 altogether. PIBC's only evidence showing that El–Fadl can sue PIBC in Jordan was the conclusory statement in Al–Hadidi's affidavit that "Jordanian courts are open to El–Fadl to adjudicate these claims against the defendants." This conclusory statement—even though not specifically contradicted in Tukan's affidavit as it pertains to PIBC—flies in the face of evidence that El–Fadl may not be able to sue Petra Bank, and the statement is insufficient to show that he can sue PIBC in Jordan. This court will remand when the district court fails to consider a material matter in dispute. *See Mercier,* 935 F.2d at 423. Moreover, the district court appears to have incorrectly placed the burden of proving the inadequacy of the Jordanian courts upon El–Fadl in stating that: "[A]s the plaintiff [El–Fadl] has failed to demonstrate that this action would be barred in its entirety in Jordan, the Court determines that an adequate alternative forum exists." The district court was required to hold PIBC and Petra Bank to their burden of persuasion on this issue. *See Reid–Walen,* 933 F.2d at 1394.

For these reasons, we hold that the district court erred in dismissing El–Fadl's claims against Petra Bank and PIBC on *forum non conveniens* grounds. On remand, the district court should determine the accuracy of El–Fadl's uncontroverted characterization of the legal effect of the decrees as they relate to claims against Petra Bank. In determining whether the Jordanian courts provide El–Fadl with an alternative forum, the district court should also determine whether the Jordanian decrees would bar suit against PIBC. In addition, because El–Fadl's expert, Tukan, also concluded that El–Fadl's

intentional tort claims could not be brought in a civil lawsuit for recovery of damages, but could only be brought in conjunction with a criminal complaint, the district court should determine whether the Jordanian courts are inadequate for that reason. Although this procedural difference may not render El–Fadl's remedy in Jordan inadequate, *see Lockman Found.,* 930 F.2d at 768–69, the district court should consider whether the situation would be different if El–Fadl shows that filing a criminal complaint requires the cooperation of the Jordanian authorities, who worked with the defendants in prosecuting El–Fadl in the military courts.

If the district court on remand finds that PIBC and Petra Bank have met their burden to show that Jordan is an adequate alternative forum, and the court again concludes that the balance of private and public interests weighs in favor of *forum non conveniens* dismissal, "the trial judge must finally ensure that [El–Fadl] can reinstate [his] suit in the alternative forum without undue inconvenience or prejudice." *Pain,* 637 F.2d at 785. If doubts about the availability of an alternative forum remain due to the difficulties in determining Jordanian law, the district court may dismiss for *forum non conveniens,* but only if conditioned on the defendants' submitting to jurisdiction in Jordan and on the Jordanian courts' acceptance of the case. *See, e.g., Blanco,* 997 F.2d at 984; *Mercier,* 935 F.2d at 426; *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1551–52 (5th Cir.1991). Even if the district court determines that there is an available forum, the court may condition a dismissal on PIBC's agreement to be served in the District of Columbia for suit in Jordan.[11]

Accordingly, we reverse the dismissal of the claims against Petra Bank for lack of personal jurisdiction and remand to allow El–Fadl to conduct discovery of jurisdictional facts; we also reverse the dismissal of the claims against Petra Bank and PIBC on grounds of *forum non conveniens,* remand-

---

**11.** We do not decide PIBC's contention that El–Fadl's claims were barred by D.C.Code § 12–301, because his causes of action accrued in September 1989 and he did not file suit until July 1993. El–Fadl responded that the running of the statute of limitations period was tolled by reason

of imprisonment or, alternatively, duress. D.C.Code Ann. § 12–302(a)(3). The district court did not reach the merits of El–Fadl's arguments for tolling; inasmuch as the merits rest on findings of fact that this court is ill equipped to make, nor do we.

ing for a finding whether Petra Bank and PIBC can show that Jordan is an adequate alternative forum; otherwise, we affirm.