Evelyn **SHAFFER** and Jesse Shaffer, Appellants,

v.

Thakar **SINGH**, Appellee.

No. 18616.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 14, 1964.

Decided Feb. 11, 1965.

Mr. Ralph H. Deckelbaum, Washington, D. C., with whom Messrs. Bernard Margolius and Karl E. Davis, Washington, D. C., were on the brief, for appellants.

Mr. John P. Arness, Washington, D. C., with whom Mr. George U. Carneal, Jr., Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY and WRIGHT, Circuit Judges.

FAHY, Circuit Judge:

On August 29, 1963, Evelyn Shaffer and her husband Jesse Shaffer, appellants, filed a complaint against appellee Thakar Singh and two other defendants

not parties to this appeal. Damages were claimed by the wife for personal injuries, and by the husband for loss of her society, services and consortium. The claims grew out of an automobile collision in the District of Columbia on or about November 10, 1961, when Evelyn Shaffer was a passenger in a taxicab. It was alleged that the taxicab was struck by a motor vehicle owned and operated by Thakar Singh.

Service upon Mr. Singh was made under the District of Columbia Nonresident Motorist's Act, D.C.Code § 40–423 (1961), including the mailing of a copy of the process by registered mail to Mr. Singh at his address in India, receipt of which he acknowledged.

On January 15, 1964, by his counsel Mr. Singh moved to dismiss the action for lack of jurisdiction over his person, or in lieu thereof that the return of service of summons be quashed on the grounds that he enjoyed diplomatic immunity from judicial process at the time of the accident and had not been properly served with process. Accompanying the motion was a certification by the Secretary of State of the United States, as set forth in the margin.[1]

The District Court granted the motion and quashed the return of service upon Mr. Singh, followed by this appeal.[2]

On the basis of the certification of the Secretary of State we hold that at the time of the accident Mr. Singh enjoyed

---

1. *"To all to whom these presents shall come, Greeting:*

"I Certify That according to the records of the Department of State, the name of Mr. Thakar Singh first appeared on the 'List of Employees of Diplomatic Missions' for March 1959. His name was deleted from the List in December, 1962. Accordingly, during the period from March 1959 to December, 1962, Mr. Thakar Singh enjoyed diplomatic immunity as a member of the Indian Embassy at Washington, D. C.

"In testimony whereof, I DEAN RUSK, Secretary of State, have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Authentication Officer of the said Department, at the city of Washington,

in the District of Columbia, this fifteenth day of January, 1964.
  "/s/ Dean Rusk, Secretary of State
  "By /s/ Barbara Hartman
  "Authentication Officer,
      Department of State
"[Seal]"

2. After the notice of appeal was filed April 9, 1964, on motion of the plaintiffs, appellants here, the order quashing the return of service and granting the motion to dismiss was amended by the District Court under date of July 2, 1964, to provide that the order be a final judgment as to Mr. Singh, the court reciting that it appeared there was no just cause for delay. See Rule 54(b), Fed.R.Civ. P. Jurisdiction of this court is not disputed.

diplomatic immunity. Carrera v. Carrera, 84 U.S.App.D.C. 333, 174 F.2d 496 (1949). Appellants suggest that the Secretary's certification was based simply on the fact that Mr. Singh was on the list of employees of diplomatic missions, commonly referred to as the White List, and that this did not necessarily mean he was entitled to diplomatic immunity. But we think properly construed the Secretary's certification, "Accordingly, during the period from March 1959 to December, 1962, Mr. Thakar Singh enjoyed diplomatic immunity as a member of the Indian Embassy at Washington, D. C." is the Secretary's interpretation of the diplomatic status of Mr. Singh which this court should accept under our *Carrera* decision.

Appellants' principal contention is that when service was made under the Nonresident Motorist's Act Mr. Singh, then no longer in the United States but in India, and no longer carried on the White List, was subject to service as any other nonresident. In considering this contention we assume that Mr. Singh was no longer entitled to diplomatic immunity when served as above set forth. Nevertheless, we think the service was properly quashed on the motion to that end because the Nonresident Motorist's Act does not apply to one who at the time of a collision out of which such a case arises could not then be held to answer because of diplomatic immunity.

Section 40–423 does in terms apply to a nonresident who operates a motor vehicle in the District and is involved in an accident or collision while operating the vehicle, and "nonresident" is defined to include (1) "any person" who is not a District resident and who was the owner or operator of the vehicle, and (2) any such person who was a resident at the time but who subsequently became a nonresident and is a nonresident when process is sought to be served on him.

This language, literally, embraces Mr. Singh; but we must be mindful that statutes, as the Supreme Court has cautioned,

> "are not inert exercises in literary composition. They are instruments of government, and in construing them 'the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.'" United States v. Whitridge, 197 U.S. 135, 143, 25 S.Ct. 406, 49 L.Ed. 696.

United States v. Shirey, 359 U.S. 255, 260–261, 79 S.Ct. 746, 749, 3 L.Ed.2d 789 (1959);

> "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." [Footnotes omitted.]

United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). And see Rathbun v. United States, 355 U.S. 107, 109, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); Lauritzen v. Larsen, 345 U.S. 571, 578, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

To construe Section 40–423 to cover the service in this case would cause the statute to impair the protection the law affords to those entitled to diplomatic immunity. The two policies, one to prevent operators of motor vehicles here from escaping responsibility by absenting themselves so as to avoid per-

sonal service, the other to accord the representatives of foreign governments immunity from domestic actions, can be accommodated. In doing so the literal meaning of "nonresident" is not required to be adopted if the expression can be given a meaning which, while protecting the immunity also enables the purpose of Section 40–423 to be satisfied. Approaching the problem in this manner we hold that Mr. Singh, when served, was not a "nonresident" within the meaning of Section 40–423. He could not have been served so as to be held to account at the time of the accident. When thereafter he became a nonresident by leaving his diplomatic post and returning to India he did not become such a nonresident as Section 40–423 covers; for the purpose of that provision is to reach one who could have been served when operating a motor vehicle in the District, but who thereafter became unavailable for personal service. This is not such a case.

To construe the statute to sustain the service here made upon Mr. Singh would be inconsistent with that feature of diplomatic immunity which protects its bearer for a reasonable period of time to permit him to depart the country after he leaves his diplomatic post. It seems to us that such protection, recognized by international law,[3] cannot be reconciled with upholding substituted service after he has reached his native land.[4] In any event we conclude that by Section 40–423 Congress did not intend to authorize such service as a means of requiring the departed diplomat to answer in such a case as this.

Affirmed.

3. II Hyde on International Law § 439 (1945 ed.); See Dupont v. Pinchon, 4 Dall. 321, 1 L.Ed. 851 (Pa.1805) and case in IV Hackworth, Digest of International Law 538 (1942 ed.). Closely akin is the doctrine that diplomats in transit between posts are allowed free passage through countries where they are not accredited. II Hyde, op. cit. supra § 432; IV Hackworth op. cit. supra at 460–62. This doctrine has been interpreted to give such diplomats in

transit privilege from process. See cases in II Hyde, § 432 n. 9.

4. We do not intimate any opinion, under the Nonresident Motorist's Act as to the validity of service on a person who has been involved in an automobile accident here as owner or operator of a motor vehicle during a period in which he enjoyed diplomatic immunity, but who remains in this country after he loses his immunity, or returns to the United States as a private citizen.