Tara Ann JUNGQUIST, et al., Plaintiffs,

v.

Sheikh Sultan Bin Khalifa al NAHYAN,
et al., Defendants.

Civil Action No. 95–1005 (CRR).

United States District Court,
District of Columbia.

Sept. 20, 1996.

**314**

R. Kenly Webster and Michael J. McCue of Shaw, Pittman, Potts & Trowbridge, Washington, DC, for Plaintiffs.

T. Barry Kingham, George Kahale, III, and Miriam K. Harwood of Curtis, Mallet–Prevost, Colt & Mosle, New York City; and John T. Szymkowicz and Milton Buffington of Szymkowicz & Buffington, Washington, DC, for Defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court is the defendants' renewed Motion to Dismiss on the grounds of immunity, lack of subject matter and personal jurisdiction, and *forum non conveniens.* The Court denied the defendants' previous Motion to Dismiss in order to allow limited jurisdictional discovery. Based on the pleadings, the entire record herein, the law applicable thereto, and for the reasons expressed below, the Court shall grant in part and shall deny in part the defendants' renewed Motion to Dismiss.

### BACKGROUND

#### The Allegations

This case involves a tragic boating accident that occurred in Abu Dhabi in 1993. At that time, the plaintiff Tara Ann Jungquist was a sixteen-year-old, unmarried, American child who lived with her parents in Abu Dhabi. She was a sophomore at the American Community School in Abu Dhabi. Compl. ¶ 4. Tara's father, Calvin E. Jungquist, was employed by the Abu Dhabi National Oil Company for Distribution in Abu Dhabi as Coordinator for Technical and Marketing Affairs and as Advisor to its Director General. He had held these positions for over a year. *Id.* ¶ 5. Tara's mother, Charlotte T. Jungquist, was employed as an executive secretary in Abu Dhabi with the Abu Dhabi Oilfield Services Establishment, where she had worked since June 1992. *Id.* ¶ 6. At present, all of the plaintiffs are citizens of the United States and reside in the State of New York. *Id.* ¶ 15.

Tara Jungquist and her sister Michelle worked at the Abu Dhabi International Fair, an event hosted by Sheikh Sultan Bin Khalifa Bin Zayed al Nahyan ("Sheikh Sultan"), as the Honorary Chairman of the Chamber of Commerce. Aff. of Michelle Jungquist ("MJ Aff.") ¶ 2. As the grandson of the ruler of Abu Dhabi and the first-born son of the Crown Prince of Abu Dhabi, Sheikh Sultan is in the direct line of succession to be the ruler of Abu Dhabi. Sultan Depo. at 6–7. Sheikh Sultan holds prominent positions in the Abu Dhabi government: he is the President of the Crown Prince Court, a member of the Executive Council of the Crown Prince Court, and the Honorary President of the Abu Dhabi Chamber of Commerce. Sultan Depo. at 7–9. In recognition of Tara's and Michelle's work at the fair, Sheikh Sultan invited the two sisters to attend a boat outing. MJ Aff. ¶ 3.

It is alleged that during the boat outing, on their return trip to the Royal Docks, Sheikh Sultan and one of his guests drove two motorboats recklessly through a hazardous channel after consuming alcoholic beverages. Compl. ¶ 48, 51–80; MJ Aff. ¶ 5. Their boats collided and Tara, a passenger in one of the boats, was ejected into the water and struck by the rotating propeller of the boat driven by Sheikh Sultan when he failed to turn off the engine. *Id.;* Compl. ¶ 71, 96, 117. As a result of the accident, Tara suffers permanent brain damage. *Id.* Although Sheikh Sultan admits to owning the two boats, he denies any involvement in the accident. Sheikh Sultan Depo. at 28–29.

The plaintiffs in this case allege that after the accident, Sheikh Sultan, acting individually and through his agents, offered to fully compensate Tara and her parents for Tara's medical expenses and injuries. In exchange, the Jungquists agreed to "fend[ ] off the intervention of the United States Embassy, maintain[ ] their silence about the details of the accident, and cooperat[e] in concealing Sheikh Sultan's involvement." Plaints' Opp. at 6. The plaintiffs claim that Sheikh Sultan's motivation for entering into this contract was to protect himself from the personal and political repercussions that would result from his being found responsible for the circumstances surrounding the boating collision causing Tara's permanent brain damages. Plaints' Opp. at 37.

The plaintiffs allege that the contract was partially performed in the District of Columbia where Tara Jungquist was housed, medically treated, and supervised for several months at the defendants' expense. Compl. ¶ 1. Using the formal procedural channels of the Crown Prince's Court and its medical treatment program, Sheikh Sultan and his agents paid Tara's expenses from the defendant United Arab Emirates' bank account in the District of Columbia to the Jungquists' bank account in the District of Columbia and to the National Rehabilitation Hospital in the District of Columbia. *Id.* After it was confirmed that Tara's brain damage was permanent and she would need indefinite medical care, the payments were terminated. *Id.* ¶ 152.

### The Defendants

The plaintiffs have named eight defendants in a 10 count complaint. The defendant United Arab Emirates is a federation of seven autonomous emirates. Abu Dhabi is one of the seven Emirates. The Abu Dhabi Crown Prince's Court is the administrative arm of the Crown Prince of Abu Dhabi, Sheikh Khalifa Bin–Zayed Al–Nahyan ("Sheikh Khalifa"). Sheikh Khalifa also is named in the Complaint, in his official capacity as the Crown Prince of Abu Dhabi. The defendant Sheikh Sultan, named in his individual and official capacities, is the eldest son of Sheikh Khalifa and is Chairman of the Crown Prince's Court. At all times relevant herein, the defendant Khalil I. Al–Malki ("Al–Malki"), named in his individual and official capacity, was a citizen of the UAE, and was the UAE Embassy's Medical Attache in Washington, DC. The defendant Osama Albaba ("Albaba"), named in his individual and official capacities, was a Lebanese citizen and employed as Director of Patient Relations at the UAE Medical Attache's office in Washington, DC. *See* Defs' Original Mot. to Dismiss at 1–2. The defendant Faisal M. Seddiq Samea ("Samea") is named in his individual capacity. He is alleged to be a personal friend and confidant of Sheikh Sultan, his secretary at the Crown Prince's Court, his private advisor, and Director General of the Abu Dhabi International Sports Club. Compl. ¶ 14.

Sheikh Sultan has been sued for civil conspiracy, negligence, negligent entrustment, fraud in the inducement, fraud, breach of contract, promissory estoppel, intentional infliction of emotional distress, loss of filial consortium, and loss of services. Al–Malki, Albaba, and Samea have been sued for civil conspiracy, fraud in the inducement, fraud, and intentional infliction of emotional distress. Sheikh Khalifa has been sued for breach of contract and promissory estoppel. The Crown Prince's Court has been sued for civil conspiracy, fraud in the inducement, fraud, breach of contract, promissory estoppel, and intentional infliction of emotional distress. The UAE and Abu Dhabi have been sued for fraud in the inducement, fraud, breach of contract, and promissory estoppel.

### DISCUSSION

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Court must dismiss a claim if it lacks jurisdiction over the subject matter or parties of the claim. Fed.R.Civ.P. 12(b)(1)–(2). In evaluating the plaintiffs' complaint on a motion to dismiss, the Court must base its judgment on the facts as alleged by the plaintiff and generously construed in the plaintiff's favor. *Foremost–McKesson v. Islamic Republic of Iran,* 905 F.2d 438, 440 n. 3 (D.C.Cir.1990); *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.,* 52 F.3d 373, 375 (D.C.Cir.1996) (on motion to dismiss, court must accept the

factual allegations as true and draw all reasonable inferences therefrom in favor of the plaintiffs).

The plaintiffs assert that the Court has subject matter jurisdiction under 28 U.S.C. § 1330 and 1332. They assert that the Court has personal jurisdiction over the defendants UAE, Abu Dhabi, the Abu Dhabi Crown Prince's Court, and Sheikh Khalifa pursuant to 28 U.S.C. § 1330, which provides that personal jurisdiction over a foreign state exists if subject matter jurisdiction exists and if service of process has been made. The plaintiffs further assert that the Court has personal jurisdiction over the individual defendants based on their purposeful and continuous contacts with the District of Columbia pursuant to the District's Long Arm Statute, D.C.Code § 13–423 and consistent with the Due Process clause of the Constitution. The plaintiffs assert that venue is proper under 28 U.S.C. § 1391(a), (d) and (f)(4).

## I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE CLAIMS AGAINST THE DEFENDANTS SHEIKH SULTAN, AL–MALKI, ALBABA, AND SAMEA PURSUANT TO 28 U.S.C. § 1332; THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS AGAINST THE DEFENDANTS SHEIKH KHALIFA, ABU DHABI CROWN PRINCE'S COURT, ABU DHABI, AND THE UNITED ARAB EMIRATES.

Section 1330 of Title 28 grants original jurisdiction in the district courts of "any non-jury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity. . . ." 28 U.S.C. § 1330. Section 1332 grants original jurisdiction in the district courts of "all civil actions where the matter in controversy exceeds the sum or value of $50,000 [1] . . . and is between [ ]citizens of a State and citizens or subjects of a foreign state. . . ." 28 U.S.C. § 1332. The defendants in the present case undisput-

edly are either foreign states or citizens or subjects of a foreign state. Thus, in order to exercise jurisdiction over the subject matter of the claims against these defendants, the Court must determine whether any of the defendants are entitled to immunity.

## A. THE FOREIGN SOVEREIGN IMMUNITIES ACT DOES NOT CONFER IMMUNITY TO THE DEFENDANTS SHEIKH SULTAN, AL–MALKI, ALBABA, AND SAMEA BECAUSE, NOT HAVING ACTED IN THEIR OFFICIAL CAPACITIES, THEY ARE NOT "AGENCIES OR INSTRUMENTALITIES" WITHIN THE MEANING OF THE ACT.

The Foreign Sovereign Immunities Act, ("FSIA"), 28 U.S.C. §§ 1602–11, defines "foreign state" for the purposes of § 1330 and provides that a foreign state is entitled to immunity except as exempted from immunity by the FSIA. Thus, the FSIA "must be applied by the District Courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity." *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983); *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L.Ed.2d 818 (1989) (FSIA provides sole basis for obtaining jurisdiction over a foreign state in a United States Court).

Under the FSIA, a "foreign state" includes "political subdivision[s]" and "agenc[ies] or instrumentalit[ies]" thereof. 28 U.S.C. § 1603(a). The FSIA defines "agency or instrumentality of a foreign state" as any entity

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

---

**1.** It is undisputed that the amount in controversy in this case is over $50,000.

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of [Title 28], nor created under the laws of any third country.

28 U.S.C. § 1603(b). An "agency or instrumentality of a foreign state" includes individuals acting in their official capacities; however, an official is not entitled to immunity under the FSIA for acts which are not committed in an official capacity. *See El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C.Cir.1996); *accord Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1099–1103 (9th Cir.1990); *In re Estate of Ferdinand E. Marcos Litigation*, 978 F.2d 493, 496–97 (9th Cir.1992), *cert. denied*, 508 U.S. 972, 113 S.Ct. 2960, 125 L.Ed.2d 661 (1993). Thus, with respect to an individual defendant, it must be determined whether that defendant was acting in their official capacity and thus was an "agency or instrumentality" of a foreign state in order to be accorded immunity under the FSIA. *See El–Fadl*, 75 F.3d at 671.

■ To make this determination, this Circuit has looked to whether the evidence shows that a defendant's activities were "neither personal nor private, but were undertaken only on behalf of the [sovereign]." *Id.* at 671; *cf. First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621–34, 103 S.Ct. 2591, 2597–2603, 77 L.Ed.2d 46 (to determine the separate juridical status of sovereign and agent under the FSIA, the Court looks to international and federal common law and equitable principles); *Foremost–McKesson*, 905 F.2d at 446 (instrumentalities and agencies are accorded a presumption of independent status). Furthermore, courts have focused on the defendant's actions, and not on the alleged motives behind those actions. *Chuidian*, 912 F.2d at 1107.

■ The individual defendants here argue that their actions constituted nothing more than the discharge of their official duties in coordinating Tara Jungquist's medical treatment in the United States pursuant to the Abu Dhabi government's foreign medical treatment program. However, the allegations state more than that. Specifically, the allegations state that Sheikh Sultan, Al-

Malki, Albaba, and Samea agreed to fraudulently induce the plaintiffs to agree to (a) forbear from pursuing their claims through applicable medical insurance coverage; (b) forbear from pursuing their claims directly against Sheikh Sultan and others; (c) forbear from seeking the assistance of the United States embassy in Abu Dhabi in obtaining compensation, investigating the collision and disclosing Sheikh Sultan's presence at, involvement in, and responsibility for the collision; and (d) cooperate in protecting Sheikh Sultan from public and private exposure regarding his presence at, involvement in and responsibility for the collision, and the illicit activities engaged in during the boat outing. Compl. ¶ 149. In exchange, the defendants allegedly promised to fully compensate Tara and her parents for her medical expenses and injuries, when they had no present intention to do so and, in fact, did not do so. *Id.* ¶ 150. Moreover, to accomplish this scheme, the defendants allegedly caused a doctor in Abu Dhabi to misrepresent Tara's medical diagnosis and prognosis; concealed the truth about the accident from the Jungquists, the Royal Family, law enforcement agents, and the public; and contacted one of Tara's treating physicians in Washington in an unprofessional manner in an attempt to influence him to change his written diagnosis. *Id.* ¶ 2.

These various allegations form the bases for the plaintiffs' claims against the defendants and constitute actions personal and private in nature and not taken for the benefit of the sovereign. *See El–Fadl*, 75 F.3d at 671. As alleged in the Complaint, the Crown Prince Sheikh Khalifa told his son Sheikh Sultan that, if he was "lying about the collision, he would personally take Sheikh Sultan 'for a walk in the desert,' meaning that he would cause his son to die." Compl. ¶ 102. Clearly, Sheikh Khalifa, as the Crown Prince of Abu Dhabi, would not condone or authorize the payment of moneys through the Abu Dhabi medical program as consideration for a promise from the plaintiff, *inter alia*, to keep the truth from the Abu Dhabi government. Thus, it matters not that Sheikh Sultan and his agent were authorized by their offices to effectuate payments to a patient through Abu Dhabi's medical treatment pro-

gram. Rather, it matters that Sheikh Sultan could not have been authorized to undertake the actions complained of, that is, contract to provide payment, whether or not such payment originated from the medical treatment program, in exchange for the plaintiffs' agreement, among other things, to remain silent. The actions allegedly taken by the individual defendants here, even if under the aegis of the medical treatment program, in fact were not committed in an official capacity but, rather, were taken without the authority of the individual defendants' offices.[2]

### B. THE FSIA ENTITLES THE DEFENDANTS SHEIKH KHALIFA, ABU DHABI CROWN PRINCE'S COURT, ABU DHABI, AND THE UNITED ARAB EMIRATES TO IMMUNITY BECAUSE NONE OF THE ACTIONS COMPLAINED OF WERE COMMITTED BY THESE FOREIGN STATES OR BY THEIR AGENCIES OR INSTRUMENTALITIES.

■ The defendants Sheikh Khalifa, Abu Dhabi Crown Prince's Court, Abu Dhabi, and the United Arab Emirates claim they are entitled to immunity under the FSIA.[3] The plaintiffs claim that these defendants are exempted from immunity under the FSIA pursuant to the Act's "commercial activity" exemption, which provides that a "foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—in which the action is based

upon a commercial activity . . . by the foreign state . . ." 28 U.S.C. § 1605(a)(2). The Court agrees with these defendants that they are immune from suit.

The activity complained of here was taken by Sheikh Sultan, Al–Malki, Albaba, and Samea in their individual capacities. Thus, the action is not based on a commercial activity by a foreign state. Accordingly, the Court must dismiss the plaintiffs' claims against the UAE, Abu Dhabi, the Abu Dhabi Crown Prince's Court, and Sheikh Khalifa because no exemption to immunity under the FSIA applies to those defendants.

### C. THE ACTS COMPLAINED OF HERE DO NOT FALL WITHIN THE ACT OF STATE DOCTRINE.

■ The Act of State Doctrine "precludes American courts from inquiring into the validity of public acts of a recognized foreign sovereign power committed within its own territory." *Herbage v. Meese,* 747 F.Supp. 60, 67 (D.D.C.1990), *aff'd,* 946 F.2d 1564 (D.C.Cir.1991). The Act of State doctrine applies to acts that are the result of "a considered policy determination by a government to give effect to its political and public interest." *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287, 1294 (3d Cir. 1979). "When the defense [of Act of State immunity] is raised in connection with a motion to dismiss . . ., the court must be satisfied that there is no set of facts favorable to the plaintiffs and suggested by the complaint which could fail to establish the occurrence of

**2.** In the defendants' original Motion to Dismiss, the defendants asserted that the plaintiffs failed to state a claim on which relief could be granted because, *inter alia,* the plaintiffs did not plead the elements of the alleged fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. In accordance with that rule, the circumstances constituting fraud or mistake are to be stated with particularity; however, malice, intent, knowledge, and other condition of mind of a person may be averred generally. Fed.R.Civ.P. 9(b); *see* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1297. Reading Rule 9(b)'s requirement that the circumstances surrounding fraud be plead with specificity in conjunction with Rule 8's requirement that a claim for relief contain a short and plain statement of the facts entitling the pleader to relief "normally . . . means that the pleader must state the time, place, and content of

the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1278 (D.C.Cir. 1994) (quoting *United States v. Cannon,* 642 F.2d 1373, 1385 (D.C.Cir.1981), *cert. denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982)). Although the defendants have not repeated this assertion in the renewed Motion to Dismiss, the Court carefully has examined the complaint and finds it to comply with Fed.R.Civ.P. 9(b). In fact, the Court has found no deficiency in the Complaint under Fed.R.Civ.P. 12(b)(6).

**3.** There is no dispute that the defendants the UAE, Abu Dhabi, the Abu Dhabi Crown Prince's Court, and Sheikh Khalifa, who is sued only in his official capacity as Crown Prince, are "foreign states" within the meaning of the FSIA.

an act of state." *Ramirez de Arellano v. Weinberger,* 745 F.2d 1500, 1534 (D.C.Cir. 1984), *vacated on other grounds,* 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985).

■ The Act of State doctrine does not apply to this case because, first, the actions complained of were not taken by a foreign sovereign. Rather, the defendants Sheikh Sultan, Al–Malki, Albaba, and Samea were acting in their individual capacities to advance their personal interests. Compl. ¶ 140, 149–52. Second, the actions complained of were not performed solely within the foreign sovereign's territory. *See Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 691 n. 7, 96 S.Ct. 1854, 1859 n. 7, 48 L.Ed.2d 301 (1976). Rather, the actions complained of here occurred, at least in part, in the United States. Specifically, *inter alia,* the defendants contracted to provide medical services for Tara, and that contract was partially performed in the District, with payments being made between two District of Columbia bank accounts and to a District of Columbia hospital.

## II. THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS SHEIKH SULTAN, AL–MALKI, ALBABA, AND SAMEA.

### A. THE PLAINTIFFS' CLAIMS FOR CIVIL CONSPIRACY, FRAUD IN THE INDUCEMENT, FRAUD, BREACH OF CONTRACT, AND PROMISSORY ESTOPPEL ALLEGE CONTACTS BY THE DEFENDANTS WITH THE DISTRICT OF COLUMBIA SUFFICIENT TO CONFER PERSONAL JURISDICTION PURSUANT TO THE DISTRICT OF COLUMBIA LONG ARM STATUTE AND CONSISTENT WITH THE DUE PROCESS CLAUSE.

■ Having determined that the Court has subject matter jurisdiction over the claims against Sheikh Sultan, Al–Malki, Albaba, and Samea in their individual capacities pursuant to 28 U.S.C. § 1332, the Court also must determine whether it may exercise personal jurisdiction over these defendants consistent with the District of Columbia Long Arm Statute and the Due Process Clause of the Constitution. The District of Columbia Long Arm Statute provides, in relevant part, that the court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

D.C.Code § 13–423.

With respect to the causes of action for breach of a contract, fraud, fraud in the inducement, civil conspiracy, and promissory estoppel, the plaintiffs allege that all defendants maintained sufficient contacts with the District of Columbia in order for the Court to exercise personal jurisdiction over the defendants. Specifically, the plaintiffs allege that the defendants, *inter alia,* contracted for the payment of medical expenses and compensation for injuries, and that the contract was partially performed in the District of Columbia where the plaintiff was housed, medically treated and supervised for several months at the defendants' expense. Compl. ¶ 1. The plaintiffs allege that expenses were paid from bank accounts in the District to the Jungquists' bank account in the District and to the National Rehabilitation Hospital in the District. *Id.* Also, it is alleged that the payments were stopped and that one of Tara's treating physicians in Washington, DC was contacted by or on behalf of the defendants in an unprofessional manner in an attempt to influence him to change his written medical diagnosis of Tara. *Id.* ¶ 121.

More specifically, it is alleged that Sheikh Sultan had purposeful and consistent contacts within the District including conspiring to perform acts in the District in furtherance of the conspiracy to defraud the plaintiff, contracting with the plaintiff to provide medical treatment to Tara in the District, causing his agents to partially perform the contract, to contact one of Tara's treating physicians in Washington in an attempt to influence him to change his written medical diagnosis, and to breach the contract. Compl. ¶ 18. It is alleged that Al–Malki and Albaba had purpose-

ful and consistent contacts in the District through their knowing commission of acts in furtherance of the conspiracy in the District with respect to the payment of medical expenses for Tara Jungquist and contacting one of her treating physicians in the District to attempt to influence him to change his written medical diagnosis. Compl. ¶ 152. It is alleged that Samea engaged in purposeful and consistent contacts within the District through the overt acts of his co-conspirators. Compl. ¶ 23.

These alleged contacts with the District provide a sufficient basis for the Court to exercise personal jurisdiction over the individual defendants under either the "transacting any business" arm or the "contracting to supply services" prongs of the District of Columbia's Long Arm statute. See Hissong v. Exclusive Healthcare, Inc., 121 D.W.L.R. 83, 877 (D.C.Super. May 3, 1993) (insurance company that authorized plaintiff to continue her medical treatment at Georgetown University is "transacting business" within meaning of D.C. long arm statute; DC courts have jurisdiction over out of state defendant who contracted to insure person for obligation to pay for medical services in D.C.); Koteen v. Bermuda Cablevision Ltd., 913 F.2d 973, 974 (D.C.Cir.1990) (the "transacting business" clause of the DC Long Arm statute is as far reaching as the Due Process clause allows); United States v. Ferrara, 54 F.3d 825, 828 (D.C.Cir.1995) ("transacting any business" clause interpreted to provide jurisdiction to the full extent allowed by the Due Process clause). See also Mandelkorn v. Patrick, 359 F.Supp. 692 (D.D.C.1973) (when complaint alleges conspiracy and overt act in furtherance of conspiracy occurred in the District, jurisdiction can be obtained over the coconspirators); Naartex Consulting Corp. v. Watt, 722 F.2d at 787–88 (plaintiff establishes jurisdiction over defendant under conspiracy doctrine if allege specific acts connecting the defendants with the District).

The exercise of personal jurisdiction over these defendants would not offend "traditional notions of fair play and substantial justice" in accordance with the Due Process clause. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Consistent with Due Process, jurisdiction is proper when the contacts with the forum state proximately result from actions by the defendant himself or herself that create a substantial connection with the forum State. Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 109, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987). A court must consider the burden on the defendant, the interests of the forum state and the plaintiff's interest in obtaining relief, as well as the efficient resolution of controversies and the furtherance of fundamental substantive social policies. Id. at 113, 107 S.Ct. at 1032–33.

While the individual defendants are citizens of foreign nations, it is alleged that they purposefully established contacts with the District of Columbia, including the performance in substantial part of a contract to provide medical services, the payment of money between two District bank accounts and to a District hospital, and the attempt to influence a District doctor to alter his medical report. Given these contacts, the Court finds that the interest of the plaintiffs in enforcing the alleged contract here and the interest in the District in the exercise of jurisdiction justifies any alleged burden placed on these wealthy foreign defendants. See id.; Koteen, 913 F.2d at 975. The defendants here have purposefully established minimum contacts with the District by the acts described above that justify the Court's exercise of jurisdiction consistent with Due Process.

B. THE COURT SHALL EXERCISE SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367(a) OVER THE PLAINTIFFS' CLAIMS FOR NEGLIGENCE, NEGLIGENT ENTRUSTMENT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, LOSS OF FILIAL CONSORTIUM AND LOSS OF SERVICES.

■ Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims that are so related to claims within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The determination whether to decide pendant claims is a matter committed to the discretion of this Court, guided by the factors listed in § 1367(c). *Gary v. Long,* 59 F.3d 1391, 1400 (D.C.Cir.), *cert. denied sub nom. Gary v. Washington Metropolitan Area Transit Authority,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995). First, the Court must determine whether pendant claims derive from a common nucleus of operative fact. If so, the Court has power to exercise jurisdiction. Then, the Court must determine, in the exercise of its discretion, whether it is in the interest of judicial economy, convenience, and fairness to exercise supplemental jurisdiction. *Women Prisoners of District of Columbia Department of Corrections v. District of Columbia,* 93 F.3d 910, 920, (D.C.Cir. 1996).

■ Here, the plaintiffs' claims for negligence, negligent entrustment, intentional infliction of emotional distress, loss of consortium, and loss of services all involve the same nucleus of operative facts as the claims over which the Court has original jurisdiction. Specifically, the events surrounding the boat collision gave rise to the subsequent conspiracy, fraud, and contract in order to conceal Sheikh Sultan's involvement. Furthermore, the circumstances here do not warrant departure from the exercise of supplemental jurisdiction. *See Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 458 (D.D.C.1994) (jurisdiction over conspiracy and tortious interference with contract where claims arose from conduct alleged in Title VII claims); *Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094 (S.D.N.Y.1982) (when FSIA permitted plaintiff to maintain action over foreign sovereign for alleged taking, Court exercised jurisdiction over claims for breach of contract, accounting, fraud, and tortious interference with contract). Thus, with respect to the remainder of the plaintiffs' tort claims against these defendants, the Court shall exercise supplemental jurisdiction.

## C. THE HEAD OF STATE DOCTRINE DOES NOT CONFER IMMUNITY FROM PERSONAL JURISDICTION TO SHEIKH SULTAN.

■ The defendants assert that Sheikh Sultan is immune from the Court's jurisdiction under the common law Head of State Doctrine, which immunizes a head-of-state from personal jurisdiction in the United States courts. *See, e.g., Lafontant v. Aristide,* 844 F.Supp. 128, 131–34 (E.D.N.Y.1994). Head of State immunity, however, extends only to the person the United States government acknowledges as the official head-of-state. *Id.* Recognition of a government and its officers is the exclusive function of the Executive Branch, to which the courts must defer. *Id.*

■ In the present case, the Executive has not made any determination as to Sheikh Sultan's status as a head-of-state. There has been no suggestion of immunity filed by the Executive in this case. Therefore, the Court cannot grant Sheikh Sultan Head of State immunity. *Id.; Saltany v. Reagan,* 702 F.Supp. 319 (D.D.C.1988); *see* Jerrold L. Mallory, Note, *Resolving the Confusion Over Head of State Immunity,* 86 Colum.L.Rev. 169, 173 (1986).

## D. AL–MALKI AND ALBABA ARE NOT ENTITLED TO DIPLOMATIC IMMUNITY.

The defendants assert that Al–Malki and Albaba are entitled to diplomatic immunity pursuant to the Vienna Convention Diplomatic Relations Act of 1978. Both Al–Malki and Albaba claim that, during the relative time period, they occupied positions given diplomatic and mission status and, thus, that they are entitled to dismissal pursuant to 22 U.S.C. § 254d.

■ The manner by which an individual secures a dismissal on the basis of diplomatic immunity is set forth in *Carrera v. Carrera,* 174 F.2d 496 (D.C.Cir.1949). "It is enough that an ambassador has requested immunity, that the State Department has recognized that the person for whom it was requested is entitled to it, and that the Department's recognition has been communicated to the court." *Id.* at 497; *see also Shaffer v. Singh,* 343 F.2d 324 (D.C.Cir.1965). In sum, the determination of a diplomat's status as such is made by the State Department, not the

Court. *Accord Abdulaziz v. Metropolitan Dade County*, 741 F.2d 1328 (11th Cir.1984); *United States v. Lumumba*, 741 F.2d 12 (2d Cir.1984), *cert. denied*, 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986).

■ In the present case, the defendants Al–Malki and Albaba have asserted they are entitled to diplomatic immunity. However, the Court has no evidence before it that the State Department considers that to be the case. Accordingly, there is insufficient basis for the Court to dismiss Al–Malki and Albaba pursuant to 22 U.S.C. § 254d.

### III. VENUE IS PROPER IN THIS COURT; THE COURT SHALL NOT DISMISS THIS CASE ON THE BASIS OF *FORUM NON CONVENIENS* BECAUSE THIS COURT IS THE MOST CONVENIENT FORUM.

■ The plaintiffs assert that venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), (d) and (f)(4), which provide:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought [where] a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or [where] the defendants are subject to personal jurisdiction at the time the action is commenced ...

\* \* \* \* \* \*

(d) An alien may be sued in any district.

\* \* \* \* \* \*

(f) A civil action against a foreign state as defined in [the FSIA] may be brought—(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(a), (d), (f)(4). The Court finds that venue is proper here based on 28 U.S.C. § 1391(a) and (d).

The defendants urge that the plaintiffs' complaint should be dismissed based on *forum non conveniens*. The defendants reason that no plaintiff or defendant resides in the District; that the crux of the complaint concerns activities of foreign government officials administering benefits under a foreign government program;[4] the alleged negligent acts occurred in Abu Dhabi; that all material witnesses except for the plaintiffs are in Abu Dhabi; and that the claims are most likely governed by the law of Abu Dhabi.

■ The determination whether to dismiss for *forum non conveniens* is a matter committed to this Court's discretion. *El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 677 (D.C.Cir.1996). On a Motion to Dismiss for *forum non conveniens*, the defendant bears the burden of establishing that the plaintiff's choice of forum is inappropriate. Specifically, the defendant must first establish that there is an adequate alternative forum. *El–Fadl*, 75 F.3d at 676–77. Only if there is an adequate alternative forum, does the court then weigh the relative conveniences to the parties against the presumption of the plaintiff's forum selection. *Id.* In so doing, the plaintiff's choice of forum should rarely be disturbed and only when the balance is strongly in favor of the defendant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Finally, the court must ensure that the plaintiff could reinstate suit in the alternative forum without undue inconvenience or prejudice. *El–Fadl*, 75 F.3d at 679.

■ "To show the existence of an adequate alternative forum, the defendant 'must provide enough information to enable the District Court' to evaluate the alternative forum." *El–Fadl*, 75 F.3d at 677 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981)). Here, the defendants have done little more that allege that an alternative forum exists in Abu Dhabi. The defendants have

---

4. The defendants' point about this case concerning the administration of a foreign government program does not assume the allegations as true. According to the plaintiffs' allegations, the program was simply the means by which the plain-

tiffs would be furnished moneys owed to them pursuant to the contract so that Sheikh Sultan would not suffer public exposure for his involvement.

not met their burden of persuasion on this issue.

Furthermore, the balance of factors does not weigh strongly in the defendants' favor. Taking the plaintiffs' allegations as true as the Court must, the contract, while formed in Abu Dhabi, was performed substantially elsewhere, including the District of Columbia. Thus, while some witnesses likely reside in Abu Dhabi, others reside here. Moreover, the Court finds that the plaintiffs could not reinstate this suit in that alternative forum without undue inconvenience or prejudice. Rather, dismissal likely would deprive the plaintiffs of their ability to successfully bring suit due to their limited financial resources. *See Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1122 (S.D.N.Y.1982). The cost to the plaintiffs of reinstating this case in Abu Dhabi likely would preclude this action altogether, while the cost of completing the suit in this Court likely would have relatively little impact on the defendants.

### CONCLUSION

From the inception of this case, the Court has been cognizant of its gravity, due to the nature of the allegations and parties involved. In the exercise of caution, the Court allowed limited jurisdictional discovery, including the deposition of Sheikh Sultan, to insure that the allegations against him and the others named in the complaint were not wholly baseless.

In his deposition, Sheikh Sultan denies his involvement in the collision and denies having wronged the Jungquists in any way. Rather, Sheikh Sultan contends that he merely supervised the payment of Tara's medical bills through the Abu Dhabi medical program, as was his official function. At his deposition, Sheikh Sultan admitted that he was present at the Royal Docks after the collision, followed Tara's ambulance to the hospital, arranged for her emergency medical care in Abu Dhabi, and visited her in Germany. These admissions, while they are consistent with his version of events, also support the plaintiff's detailed allegations. At this juncture, the Court cannot make credibility determinations as between the parties. The procedural posture on a Motion to Dismiss requires the Court to construe the complaint in the plaintiffs' favor and to take the plaintiffs' allegations as true. *Foremost–McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 440 n. 3 (D.C.Cir.1990).

For the reasons expressed above, the Court shall grant the defendants' Motion to Dismiss with respect to the claims against Sheikh Khalifa, Abu Dhabi Crown Prince's Court, Abu Dhabi, and the United Arab Emirates. The Court shall deny the defendants' Motion to Dismiss with respect to the plaintiffs' claims against Sheikh Sultan, Al–Malki, Albaba, and Samea in their individual capacities. The Court shall issue an Order of even date herewith, consistent with the foregoing Memorandum Opinion.