Olivier BANCOULT et al., Plaintiffs,

v.

Robert S. McNAMARA et al., Defendants.

Civ.A. No. 01–2629 (RMU).

United States District Court,
District of Columbia.

March 10, 2003.

**6**

Michael Edward Tigar, Washington, DC, for plaintiffs.

Richard Montague, U.S. Department of Justice, Civil Division, Elaine Marzetta Lacy, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for federal defendants.

Harry M. Reasoner, Scott J. Atlas, Vinson & Elkins, L.L.P., Houston, TX, Michael R. Charness, John David Taurman, Vinson & Elkins, L.L.P., Washington, DC, for defendant Halliburton.

Cynthia T. Andreason, Leboeuf, Lamb, Greene & MaCrae, L.L.P., Washington, DC, for DCDM.

## MEMORANDUM OPINION

URBINA, District Judge.

### GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT; DENYING WITHOUT PREJUDICE ALL PENDING MOTIONS PERTAINING TO THE ORIGINAL COMPLAINT

### I. INTRODUCTION

This matter comes before the court on the plaintiffs' motion for leave to file an amended complaint. The plaintiffs are persons indigenous to the Chagos Archipelago ("Chagos"), their survivors, or their direct descendants. They bring this class action against several defendants—including the United States government, several current and former United States officials, and certain private entities—for forced relocation, torture, racial discrimination, cruel, inhuman, and degrading treatment, genocide, intentional infliction of emotional distress, negligence, and trespass. Because the plaintiffs' amendment is of right as to certain defendants, but is futile as to one defendant for lack of personal jurisdiction, the court grants in part and denies in part the plaintiffs' motion to amend their complaint, and denies without prejudice all pending motions pertaining to the original complaint.

### II. BACKGROUND

#### A. Factual Background

Chagos is a grouping of small islands in the middle of the Indian Ocean, at least 1,000 miles away from the nearest landmasses of India, Mauritius, Australia, and the Gulf States. Compl. ¶ 10. It includes the islands of Diego Garcia, Peros Banhos, Salomon, and numerous other small islands. *Id.* ¶ 8. Ceded to the United Kingdom by the French in 1814, Chagos became part of the British colony of Mauritius, and continues under British administration today. *Id.* ¶¶ 9–10, 18. Its population, which numbered more than 550 in 1861, had grown to approximately 1,000 inhabitants by the 1960s. *Id.* ¶¶ 8, 10.

In 1964, the British and United States governments entered into negotiations to es-

tablish a United States military facility in the Indian Ocean. *Id.* ¶ 17. One year later, the British detached Chagos from Mauritius and incorporated the archipelago in a newly created British Indian Ocean Territory ("BIOT"). *Id.* ¶ 9. Subsequently, the Chagos population was removed to Mauritius and Seychelles. *Id.* ¶¶ 21–23. Diego Garcia, the largest of the Chagos islands, then became home to the proposed U.S. military facility. *Id.* ¶ 25.

## B. Procedural History

On December 20, 2001, the plaintiffs filed a complaint against the United States government, eight current and former federal officials (collectively, the "federal defendants"), U.S. corporation Halliburton Company, and Mauritian company De Chazal Du Mée & CIE ("DCDM"). Subsequently, the United States, the federal defendants, and DCDM[1] responded by filing motions to dismiss, while Halliburton filed a motion to dismiss or, in the alternative, for summary judgment.

On February 14, 2002, the plaintiffs moved for a preliminary injunction to bar defendants United States and DCDM from engaging in allegedly discriminatory policies and practices. On September 30, 2002, the court issued a memorandum opinion denying the plaintiffs' motion for a preliminary injunction, ordering further briefing on the United States' motion to dismiss for lack of subject-matter jurisdiction, and granting DCDM's motion to dismiss for ineffective service of process.[2] Mem. Op. dated Sept. 30, 2002.

On November 12, 2002, the plaintiffs moved for leave to amend their complaint to reinstate DCDM and to add Brown & Root, a subsidiary of Halliburton as defendant parties. The court now turns to the plaintiffs' motion for leave to amend their complaint.

## III. ANALYSIS

### A. The Court Grants in Part and Denies in Part the Plaintiffs' Motion for Leave to Amend the Complaint

#### 1. Legal Standard for a Motion for Leave to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. FED. R.CIV.P. 15(a). As our court of appeals has noted, the rule "guarantee[s] a plaintiff an absolute right" to amend its complaint once at any time before the defendant has filed a responsive pleading and the court has decided a motion to dismiss. *James V. Hurson Assocs., Inc. v. Glickman,* 229 F.3d 277, 282–83 (D.C.Cir.2000). If there is more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have not answered. 6 Fed. Prac. & Proc. Civ.2d § 1481. Motions to dismiss and for summary judgment are not considered responsive pleadings for the purposes of Rule 15. *Id.* at 283; *Bowden v. United States,* 176 F.3d 552 (D.C.Cir.1999); *United States Info. Agency v. Krc,* 905 F.2d 389, 399 (D.C.Cir.1990).

Once a responsive pleading is filed, a party may amend its complaint only by leave of the court or by written consent of the adverse party. FED.R.CIV.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The grant or denial of leave is committed to the discretion of the district court. *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996). The court must heed Rule 15's mandate that leave is to be "freely given when justice so requires." FED.R.CIV.P. 15(a); *Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080, 1083 (D.C.Cir.1998). "If the underlying facts or

---

1. DCDM filed its motion to dismiss on March 27, 2002, contending that the plaintiffs failed to effectively serve DCDM with a summons or to allege a statutory or constitutional basis for personal jurisdiction against DCDM. DCDM Mot. to Dismiss at 5, 23–24. On April 12, 2002, the plaintiffs responded with a motion for leave to conduct immediate discovery and for an enlargement of time to respond to DCDM's motion to

dismiss. Pls.' Mot. for Leave to Conduct Immediate Disc. ("Mot. for Disc.").

2. The court granted DCDM's motion to dismiss after treating its motion as conceded in light of the plaintiffs' failure to file a memorandum in opposition. Mem. Op. dated Sept. 30, 2002.

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182, 83 S.Ct. 227. Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Caribbean Broad. Sys.*, 148 F.3d at 1083.

▬ Denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C.Cir.1996). An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss. *Robinson v. Detroit News, Inc.*, 211 F.Supp.2d 101, 114 (D.D.C.2002) (quoting 3 Moore's Federal Practice § 15.15[3] (3d ed.2000)); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C.Cir.1996) (affirming the district court's denial of leave to amend given the "little chance" that plaintiff would succeed on his claim).

▬ As for undue delay, the text of Rule 15 does not prescribe a time limit on motions for leave to amend. FED.R.CIV.P. 15(a); *Caribbean Broad. Sys.*, 148 F.3d at 1084. Accordingly, a court should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend. *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C.Cir.1996) (citing *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19 (1st Cir.1979)). Nor does the prolonged nature of a case affect whether the plaintiff may amend its complaint. *Caribbean Broad. Sys.*, 148 F.3d at 1084 (concluding that the length of litiga-

tion is relevant only insofar as it suggests bad faith or prejudice). Rather, the court should take into account the actions of other parties and the possibility of resulting prejudice. *Atchinson*, 73 F.3d at 426; *Caribbean Broad. Sys.*, 148 F.3d at 1084.

### 2. The Court Grants the Plaintiffs' Motion for Leave to Amend As to All Defendants Except DCDM

In this case, all eleven defendants filed motions to dismiss or for summary judgment in response to the plaintiffs' complaint. In its September 30, 2002 ruling, the court addressed two of these motions, deciding only to dismiss DCDM without prejudice for ineffective service of process. Mem. Op. dated Sept. 30, 2002 at 7–9. Because none of the motions qualify as "responsive pleadings," and because the court did not decide the motions filed by the United States,[3] the federal defendants, and Halliburton, the plaintiffs have an "absolute right" to amend their complaint with regard to the United States, the federal defendants, and Halliburton, and to add Brown & Root as a new defendant. FED.R.CIV.P. 15(a); *James V. Hurson Assocs.*, 229 F.3d at 283; *Bowden*, 176 F.3d at 555; Mem. Op. dated Sept. 30, 2002. The court therefore grants the plaintiffs leave to amend their complaint with regard to those parties.[4]

### 3. The Court Concludes That the Plaintiffs' Proposed Amended Complaint Would Be Futile As to DCDM for Lack of Personal Jurisdiction

The question left before the court is whether the plaintiffs may amend their complaint to reinstate DCDM. The plaintiffs argue that the court should grant their motion because they seek to amend their complaint in good faith, for the first time, and within weeks of the court's dismissal of DCDM. Pls.' Mot. for Leave at 5. Stressing the general principle that leave to amend must be freely given, the plaintiffs note that the court's

---

3. In its response, defendant United States indicated that it "takes no position" on the plaintiffs' motion to amend. Def. United States' Resp. at 1.

4. When a plaintiff's amendment of the complaint is "as a matter of course" under Rule 15(a), the

plaintiff's filing of a motion for the court's leave to amend does not nullify the plaintiff's right to amend and invoke the court's authority to deny leave. *E.g., Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir.2002).

dismissal of DCDM for ineffective service was without prejudice. *Id.* at 2–3 (citing Mem. Op. dated Sept. 30, 2002). They state that denial of leave to amend is appropriate only where there is sufficient reason, and that no such reason is present here. *Id.* at 4–5; Pls.' Reply at 4. In response to DCDM's allegation of futility based on lack of personal jurisdiction, the plaintiffs argue that DCDM has not provided the court with evidence proving futility, and that futility is inappropriate because the plaintiffs have not yet had the opportunity to conduct jurisdictional discovery. Pls.' Reply at 3–6.

DCDM counters that denial of leave to amend is appropriate in certain circumstances, such as futility of amendment, undue delay, bad faith, or repeated failure to cure deficiencies. DCDM Opp'n to Mot. for Leave at 4–5. Here, DCDM argues that amending the complaint to reinstate DCDM would be futile. *Id.* at 5. Specifically, DCDM contends that the amended complaint would not survive a motion to dismiss because it fails to cure the court's lack of personal jurisdiction over DCDM. *Id.* at 4–5. Noting that the amended complaint is identical to the original complaint but for what DCDM implies are "minor corrections," DCDM states flatly that it has already provided the court with evidence controverting each of the plaintiffs' jurisdictional allegations in connection with its motion to dismiss. *Id.* at 5–7.

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. New York Zoological Soc'y,* 894 F.2d 454, 456 (D.C.Cir.1990). The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C.Cir.2001). Bare allegations and conclusory statements are insufficient. *Id.*

In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies appearing in the record in favor of the plaintiff. *Crane,* 894 F.2d at 456. The court need not treat all of the plaintiff's allegations as true, however. *United States v. Philip Morris Inc.,* 116 F.Supp.2d 116, 120 n. 4 (D.D.C. 2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (citing 5A Fed. Prac. & Proc. § 1351).

### b. Legal Standard for Personal Jurisdiction Over a Non-Resident Defendant

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C.Cir.2000).

First, a plaintiff must show that the personal jurisdiction may be grounded in one of the several bases provided by the District of Columbia's long-arm statute. D.C.CODE § 13–423 (2001); *GTE New Media Servs.,* 199 F.3d at 1347. That statute provides, *inter alia,* that personal jurisdiction exists over any person as to a claim for relief arising from the person's

(1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia....

D.C.CODE § 13–423(a). Subsection (b) qualifies the reach of the statute by noting that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* § 13–423(b).

Second, the Due Process Clause of the Fifth Amendment to the U.S. Constitution requires the plaintiff to demonstrate " 'mini-

mum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs.,* 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 95 (D.C.Cir.2002). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v.Super. Ct. of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *GTE New Media Servs.,* 199 F.3d at 1347 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

▪ If a defendant files a motion to dismiss for lack of personal jurisdiction, a plaintiff "is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El–Fadl v. Cent. Bank of Jordan,* 75 F.3d 668, 676 (D.C.Cir.1996). First, however, the plaintiff must "demonstrate[ ] that it can supplement its jurisdictional allegations through discovery." *GTE New Media Servs.,* 199 F.3d at 1351. If the plaintiff has provided statements too bare to support an inference of jurisdiction, responded to a defendant's affidavit with speculative or a complete absence of jurisdictional facts, or fails to make counter-allegations in its own affidavit, denial of discovery is not an abuse of discretion. *Caribbean Broad. Sys.,* 148 F.3d at 1089–90 (listing cases in which courts have required a colorable basis for jurisdiction before subjecting the defendant to discovery); *Edmond*

*v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir.1991) (noting that denial of discovery when the plaintiffs' allegations are conclusory is not an abuse of discretion).

▪ After reviewing the plaintiffs' allegations, the court concludes that the plaintiffs have failed to allege specific acts connecting DCDM with the District of Columbia pursuant to its long-arm statute. Moreover, because the plaintiffs have not demonstrated an ability to supplement their jurisdictional allegations through discovery, and DCDM has responded to the allegations with affidavits rebutting the allegations, the court determines that jurisdictional discovery would not be appropriate. Therefore, the court concludes that it lacks personal jurisdiction over DCDM.

### a. The Plaintiffs' Jurisdictional Allegations

In their original complaint, the plaintiffs do not identify a District of Columbia statute supporting personal jurisdiction over DCDM.[5] Compl. ¶ 4. Rather, they state that the court has personal jurisdiction over DCDM because DCDM "by and through [its] conduct and contacts within the forum ha[s] purposely availed [itself] of this forum." *Id.* ¶ 4. Paragraph 49 of the complaint describes DCDM as "a Mauritian company [that is (1)] an accredited representative of Arthur Andersen [(2)] with offices in Washington D.C. [and which (3)] recruits civilians for positions on Diego Garcia on behalf of the U.S. Navy and Department of Defense." *Id.* ¶ 49. In support of these contentions, the plaintiffs point to website and marketing materials of Arthur Andersen that list DCDM as its correspondent firm in Mauritius. Pls.' Mot. for Disc. at 7–8, Attachs. 2–4. The plaintiffs also cite DCDM website material listing the company World Business as its U.S. representa-

---

5. "Plaintiffs bear the burden of establishing jurisdiction ... and it must appear on the face of the complaint." *Tavoulareas v. Comnas,* 720 F.2d 192, 195 (D.C.Cir.1983). Instead of identifying the relevant District of Columbia statute in which personal jurisdiction is alleged to be grounded, the plaintiffs state that personal jurisdiction is proper under the general venue statute, 28

U.S.C. § 1391(b). Compl. ¶ 4. In their reply to DCDM's opposition to the motion to amend, however, the plaintiffs hint that they are relying on the District's long-arm statute. Pls.' Reply at 6 (citing to D.C.Code 13–423). According the plaintiffs the benefit of the doubt, the court analyzes the plaintiffs' allegations pursuant to the District's long-arm statute.

tive, and observe that World Business procures assignments for DCDM with District-based institutions (such as the World Bank) and provides training for DCDM staff via workshops in Mauritius and the District. *Id.* at 6–7, Attach. 1. Finally, the plaintiffs note that DG 21—the international joint venture with whom DCDM is under contract to recruit civilian employees for Diego Garcia—has a U.S. address, pays DCDM in U.S. dollars, and allows DCDM to help make arrangements for new employees to travel to Diego Garcia. *Id.* at 3, 8–9, Attach. 5.

In their amended complaint, the plaintiffs again do not identify a statutory basis for personal jurisdiction over DCDM, but revise and expand their description of DCDM to incorporate some of the above details. Pls.' Mot. for Leave Ex. 1 ¶¶ 5, 49. As revised, paragraph 49 states that DCDM is "a Mauritius company headquartered in Port Louis, Mauritius [that is] the largest accounting and consulting firm in Mauritius." *Id.* ¶ 49. The paragraph continues by alleging that

> DCDM's connections to this forum and to the United States are many. DCDM maintains a U.S. representative office in Washington, D.C., through which it solicits business in the U.S. and to which it sends employees for seminars and workshops. In addition, DCDM was, until recently, an accredited representative of Arthur Andersen Worldwide. This relationship allowed DCDM to represent itself to U.S. citizens as a U.S. regional office of Arthur Andersen Worldwide in Mauritius. Finally, DCDM provides the employment services for the U.S. Government through an international joint venture composed of U.S. corporations and with an office in the U.S. DCDM is paid for these services with U.S. dollars.

*Id.*

DCDM vigorously disputes the plaintiffs' allegations of personal jurisdiction. Noting that the plaintiffs failed to identify a valid statutory basis for personal jurisdiction, DCDM maintains that the facts alleged do not support jurisdiction under the District of Columbia's jurisdictional statutes. DCDM Mot. to Dismiss at 6–16 (citing D.C. CODE

§§ 13–334, 13–422, and 13–423); DCDM Opp'n to Mot. for Disc. at 6. First, DCDM states that it is indeed a representative of Arthur Andersen, but only in African countries, not in the District of Columbia. DCDM Mot. to Dismiss at 8; DCDM Opp'n to Mot. for Disc. at 6. Moreover, DCDM observes that its representative arrangement is with a Swiss corporation—Arthur Andersen & Co., Société Cooperative—and is governed by Swiss law. DCDM Mot. to Dismiss at 8–9; DCDM Opp'n to Mot. for Disc. at 6. Second, DCDM states that it "does not have and never has had an office or place of business in the District," and points out that the District of Columbia address listed in the complaint is that of World Business, Inc., an independent corporation with whom DCDM has a consulting agreement regarding its business in Africa. DCDM Mot. to Dismiss at 9–10, Ex. A; DCDM Opp'n to Mot. for Disc. at 6. Third, with regard to U.S. military recruiting, DCDM explains that it is under a contract, executed in Mauritius and Diego Garcia, to provide employment support services to DG 21, a private joint venture of two United States corporations and a British corporation that has a contract with the U.S. Navy. DCDM Mot. to Dismiss at 11–12; DCDM Opp'n to Mot. for Disc. at 7. DCDM stressed that its contract is performed exclusively in Mauritius and is regulated by Mauritian law, and that DCDM does no advertising in the United States, has no U.S. contacts (military or otherwise), and supplies no services in the United States. DCDM Mot. to Dismiss at 11–12, 14; DCDM Opp'n to Mot. for Disc. at 7. In support of its assertions, DCDM submits copies of its agreement with World Business and its contract with DG 21, and affidavits from DCDM partner Jacques Pougnet and World Business vice-president Eric Toumayan. DCDM Mot. to Dismiss Exs. A, B, C.

### b. The Two–Part Personal Jurisdiction Inquiry

The plaintiffs' allegations fall short of satisfying the two-part inquiry set forth by this circuit, particularly in light of the affidavits submitted by DCDM.[6] *GTE New Media*

---

**6.** "Facts asserted by the plaintiff in his Com-          plaint are presumed to be true unless directly

*Servs.*, 199 F.3d at 1347. With regard to the first prong of the inquiry, personal jurisdiction is not applicable under the District of Columbia long-arm statute because the jurisdictional allegations and affidavits do not show that the plaintiffs' claims arise from DCDM's transacting business, contracting to supply services, or causing tortious injury in the District of Columbia. D.C.CODE § 13–423(a), (b).

First, as attested by DCDM partner Jacques Pougnet, DCDM has a representative arrangement with Arthur Andersen & Co., Société Cooperative, to provide professional services in Mauritius and West African nations. DCDM Mot. to Dismiss Exs. A, C. It may be true that Arthur Andersen has "a major global presence," and that DCDM markets its Andersen relationship as giving it "instant access to the intellectual capital and human technological resources of Arthur Andersen." Pls.' Mot. for Disc. at 7–8. But even assuming that these statements are true, and that "[s]uch capital and resources would likely arise out of Andersen's U.S. presence," these "facts" provide neither a physical nor a logical connection to the District of Columbia. *Id.* at 8; D.C.CODE § 13–423(a). The same flaw undermines the strength of the plaintiffs' argument that DCDM "is listed on the U.S. Embassy website as one of several 'U.S. regional offices, national offices, and franchises in Mauritius.'" *Id.* Nor do the plaintiffs explain how the plaintiffs' claims "aris[e] from" the Andersen arrangement. D.C.CODE § 13–423(b); Compl. ¶ 49; Pls.' Mot. for Leave Ex. 1 ¶ 49.

Second, the agreement between DCDM and World Business focuses on consulting services for the procurement of World Bank projects in Africa. DCDM Mot. to Dismiss Ex. A. The affidavit by DCDM partner Jacques Pougnet flatly states that World Business "is not an office of DCDM and DCDM has never represented World Business as such." *Id.* But even if World Business were DCDM's "U.S. representative," the plaintiffs' claims against DCDM do not "aris[e] from" the DCDM–World Business consulting agreement or any services performed or training conducted thereunder. D.C.CODE § 13–423(b); Compl. ¶ 49; Pls.' Mot. for Leave Ex. 1 ¶ 49.

Third and finally, the contractual relationship between DCDM and DG 21 does not bring DCDM within the reach of the District of Columbia's long-arm statute. The plaintiffs characterize DG 21 as "an international joint venture which includes two U.S. corporations and works exclusively for the U.S. Navy, to recruit civilian employees to work at the U.S. naval base at Diego Garcia." Pls.' Mot. for Disc. at 3. Yet it is difficult to discern how the fact that DCDM's contracting partner includes American investors and is employed by the U.S. Navy ties DCDM to the District of Columbia. The fact that DG 21 maintains a U.S. postal address outside of the District of Columbia and pays DCDM in U.S. dollars is equally meaningless in the context of the District of Columbia's personal jurisdiction statute. Pls.' Mot. for Disc. at 8; D.C.CODE § 13–423(a). As for the recruiting done by DCDM for DG 21, nowhere do the plaintiffs allege that recruiting occurred within United States jurisdiction, let alone within the District of Columbia.[7] *Id.* at 8–9; Pls.' Mot. for Leave at 5.

In sum, the plaintiffs have alleged jurisdictional facts that, when aided by a series of inferential leaps, ostensibly lead from Mauritius to the shores of the United States, and from there to the District of Columbia. But these facts are not sufficient to satisfy the District of Columbia long-arm statute, and

---

contradicted by affidavit." *Dooley v. United Techs. Corp.*, 786 F.Supp. 65, 70 (D.D.C.1992).

7. At the end of their reply brief, the plaintiffs imply that they are invoking the District of Columbia's long-arm statute under a conspiracy theory. Pls.' Reply at 6. By waiting until their reply to raise this argument, the plaintiffs gave DCDM no chance to respond. In this circuit, "precedents require that petitioners lay all their arguments on the table in their opening briefs so that their opponents are not taken by surprise." *Natural Res. Defense Council v. Envtl. Prot. Agency*, 25 F.3d 1063, 1072 n. 4 (D.C.Cir.1994). Accordingly, courts in our circuit will not consider arguments raised for the first time in a reply. *Id.* For that reason, the court declines to address the plaintiffs' theory. *Id.; Dorn v. McTigue*, 157 F.Supp.2d 37, 46 n. 3 (D.D.C.2001).

thus to justify the court's exercise of jurisdiction over DCDM.[8]

### c. Jurisdictional Discovery

To save their allegations of personal jurisdiction, the plaintiffs urge the court to permit them to conduct limited jurisdictional discovery, and state that "[d]enying such discovery has been found to be reversible error." Pls.' Mot. for Disc. at 4 (relying on *El–Fadl*, 75 F.3d at 676 and *Crane v. Carr*, 814 F.2d 758, 764 (D.C.Cir.1987)). It is true that a plaintiff usually is entitled to reasonable discovery when faced with a motion to dismiss for lack of personal jurisdiction. *El–Fadl*, 75 F.3d at 676. But as noted, a plaintiff first must sufficiently demonstrate that it can supplement the jurisdictional allegations via discovery. *Id.; GTE New Media Servs.*, 199 F.3d at 1351.

In this case, the plaintiffs' circumstances differ significantly from those of the *El–Fadl* and *Crane* plaintiffs. In *El–Fadl*, a plaintiff attempting to prove jurisdiction over a foreign bank won jurisdictional discovery based on the fact that he had alleged several specific transactions (including several loan and other financial agreements, and consequent litigation) linking the bank to the District of Columbia. *El–Fadl*, 75 F.3d at 676. In *Crane*, the plaintiff sought discovery to augment several contacts (including board membership, printing activities, solicitation, and occasional exchanges) between the District of Columbia and the New York Zoological Society after a libelous letter from the society's assistant director made its way to various wildlife and environmental entities within the forum. *Crane*, 814 F.2d at 761–62, 764. In sharp contrast, the plaintiffs' allegations in this case show ties between the District of Columbia and DCDM that are tenuous at best, particularly in light of DCDM's affidavits and the significant hurdle posed by the minimum-contacts requirement. Their allegations simply are too bare to support an inference of jurisdiction. *Caribbean Broad. Sys.*, 148 F.3d at 1089–90. Jurisdictional discovery therefore is not appropriate.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiffs' motion to amend their complaint. Because the original complaint now is superseded by the amended complaint, the court denies without prejudice all pending motions pertaining to the original complaint. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of March, 2003.

---

8. Even if the plaintiffs' allegations could satisfy the long-arm statute, it is highly unlikely that the plaintiffs could meet the constitutional due process prong of the two-part inquiry. Among the factors that determine whether it is reasonable to require a corporation to defend a suit are the forum state's interest in adjudicating the dispute and the defendant's burden of litigating in a distant forum. *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. 559. Here, neither the plaintiffs nor DCDM are domiciled in the District of Columbia. Compl. ¶¶ 31–35, 49; Pls.' Mot. for Leave Ex. 1 ¶ 31–35, 49. Consequently, the District of Columbia's interest in the dispute is slight. *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026. Moreover, the severe burden of litigating in a foreign legal system that would be shouldered by DCDM—a Mauritian company thousands of miles from the District of Columbia—deserves "significant weight" in determining whether personal jurisdiction applies. *Id.; see In re Baan Co. Sec. Litig.*, 81 F.Supp.2d 75, 81 (D.D.C.2000) (noting that cases involving alien rather than domestic corporations require a more stringent minimum contacts analysis).